IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,122






DENNIS JOE PHARRIS, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL 


FROM CAUSE NO. 1016730 FROM THE 351
ST DISTRICT COURT


HARRIS COUNTY





 Cochran, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Appellant, Dennis Joe Pharris, has appealed the trial court's denial of bail from the
third in a series of indictments and complaints filed against him by the consumer fraud
division of the Harris County District Attorney's Office between June of 2004 and April of
2005. Mr. Pharris alleges that "[t]he prosecutor's transparent attempt to serially charge
Pharris and indefinitely imprison him violates the spirit of Article I, Section 11a [of the
Texas Constitution], which is "strictly construed in favor of bail." Appellant originally
requested that this Court reverse the trial court's order denying bail and set reasonable bond. 
The State argues that this appeal is moot because the trial court was required by law to set
bail after sixty days and it has done so. Although the "no-bond" order in Cause Number
1016730 is now moot, it is abundantly apparent from the record before us that the State
intends to file additional charges against Mr. Pharris and may seek additional "no bond"
orders. Therefore, we will address the merits of the issue presented under the "capable of
repetition but evading review" exception to the mootness doctrine. 

I.


 On June 17, 2004, the State indicted Mr. Pharris for the felony offense of forgery of
a United States government instrument (Cause No. 991356). Bond was originally set at
$10,000 and later increased to $100,000. Mr. Pharris made bail and was released on June 27,
2004. 

 The State filed its second criminal complaint against Mr. Pharris on December 15,
2004, for engaging in organized criminal activity (Cause No. 0101543). In that complaint,
the State alleged that on "various dates between November 1, 2004 and November 30, 2004"
he participated in a combination consisting of himself, Miriam Pharris, Cindy Pharris,
Chisholm McDonald, and/or Juan Ballivian, to commit theft of more than $200,000 from
Hibernia Bank or its employees, Peter Baldassaro, Jr., and Curtis Ward. This complaint
contained an enhancement paragraph alleging that Pharris had been convicted in 1993 of
wire fraud in a Texas federal district court. After a hearing on December 21, 2004, the trial
court denied bail in this second case because the State had alleged that this offense was
committed while Pharris was on bond for the first case, the forgery charge. 

 At this December 21st hearing, Jack Kuo, an assistant vice-president of Southwestern
National Bank, testified that Mr. Pharris became a customer of his bank in July 2004. (1) 
Pharris said that he came from a wealthy family, and that his parents owned a lot of real
estate near Austin and had put their assets in trust. Pharris said that the trust owned NG
Holdings with a net worth of $30 million. Mr. Pharris provided a supporting financial
statement, and he told Mr. Kuo that he wanted the bank to refinance some loans he had with
another bank; he wasn't getting good service from them and he needed faster credit. Mr.
Kuo agreed to give Pharris a $750,000 line of credit which Pharris drew down within two to
three weeks. Some of the family trust depository checks bounced. At one point, the bank
was down about $120,000. The bank stopped loaning Pharris money on December 3, 2004,
and Pharris then cleared all of the overdrafts. He has kept up with the payments on his line
of credit, but Mr. Kuo sent out an acceleration letter saying that Pharris was in default
because he had not provided all of the necessary financial reports. According to Mr. Kuo,
the bank was "not out any money at this point in connection with doing business with Dennis
Pharris."

 Curtis Ward, one of the complainants in the second case, testified that he is the Vice-President of business banking for Hibernia National Bank in Katy. He met Mr. Pharris and
a business associate for lunch in early November. Pharris told him that he was a trustee of
the JLP Trust, a family trust supposedly worth $28-30 million, and of NG Holdings, a
company with real estate, trucking, and convenience store interests. Pharris wanted to have
a business relationship with the bank. He opened several depository accounts. Mr. Ward
gave Pharris a "substantial loan" of $1.8 million on a new home and gave him an unsecured
line of credit for $100,000. The bank normally waits until deposits are cleared before giving
credit on them, but Mr. Ward really wanted Pharris's business and thought the bank "was
going to make money off of him." Mr. Ward made a business decision to issue Pharris
cashier's checks before the bank collected the funds from the depository checks. Pharris 
drew down $85,000 of the $100,00 line of credit. A few days later, Mr. Ward shut down the
line of credit because all of Pharris's depository checks were dishonored and returned as NSF
(not sufficient funds). At the time of the hearing, Mr. Ward's bank was in "an overdraft
situation" of more than a million dollars. 

 Shiela Patterson, the branch manager at Hibernia, testified that Mr. Pharris became
a bank customer around November 10, 2004. Mr. Ward called her and said that Pharris was
a "trustee over a huge trust and we're going to be making a lot of money with him or doing
a lot of transactions with him and please give him special consideration." According to Mr.
Ward, Pharris was "a big fish." Ms. Patterson said that she would not have given Mr. Pharris 
a million dollars of the bank's money if she had known that his depository checks would be
dishonored.

 Randy Williams, a bankruptcy lawyer for Thompson & Knight, testified that many of
Mr. Pharris's companies were presently in bankruptcy. He thinks that the JLP Trust has
outstanding obligations to banks of $10-15 million, and more is owed to trade creditors. 
None of that debt, however, accrued between June 27, 2004 (the date Mr. Pharris was
released on bail in the first case) and December 15, 2004.

 Finally, Rachel Hygh, a student intern in the consumer fraud division of the D.A.'s
Office, testified that she participated in the execution of a search warrant at Mr. Pharris's
office on December 15, 2004. She testified that some unnegotiated checks on an NG
Holdings account were seized. They were machine-printed checks, not printed on stock from
a bank. They appeared to have a facsimile signature.

 Neither the State nor the defense summed up the evidence or discussed its
significance. Based solely upon this evidence, the trial judge denied bail on the second
(Hibernia Bank) charge. Because Article I, § 11a of the Texas Constitution requires that a
"no bond" order automatically expires after sixty days and the trial court must then set
reasonable bail, the trial court set bail of $100,000 in this second case on February 14, 2005. 
 Later that same afternoon, but before Mr. Pharris could make bail, the State filed its
third charge against Mr. Pharris, resulting in the present case (Cause No. 1016730). This
time the State alleged what it called the crime of engaging in organized criminal activity to
commit theft from Bank One (2) on "various dates between September 15, 2004 and October
6, 2004." That is, the third charge was alleged to have been committed before the second
charge but after the first charge. The State once again requested a "no bond" order, so
another "no bond" hearing was held on February 18, 2005.

 At this hearing, the trial judge expressed his concern that Mr. Pharris had not been
released on bail for the second charge, and thus could not have committed this third offense
while on bail for the second offense: "being in jail with a new charging instrument filed ...
is not sufficient ... that's not going to work." The trial judge expressed concern that he did
not have jurisdiction to deny Mr. Pharris bail on the third charge. Nonetheless, the trial court
allowed the State to present its evidence to establish "a substantial showing" of Mr. Pharris's
guilt of the third charge.

 The only witness who testified at this hearing was Bill Stokes, "a relationship
manager" with Bank One, who works with small-business owners. He met Mr. Pharris in
September 2004 at "a filling station combination restaurant." Mr. Pharris told him that he
was the trustee of a large trust worth "multi-millions of dollars." Pharris indicated that he
controlled the assets and wanted to open several accounts with Bank One. His financial
statements indicated that he had $26 million in equity and millions in liquid assets that could
be put in Mr. Stokes's bank. Mr. Stokes was interested in acquiring that account. Pharris
wanted to establish a line of credit for $1.5 million for a home loan and he needed immediate
credit. Mr. Stokes called Southwest Bank and "they reported that [Pharris] had a $750,000
line of credit with that bank and that he was a customer in good standing." That was one of
the reasons why Mr. Stokes immediately approved the loan. Pharris asked if he could get
instant credit, Mr. Stokes said "Yes," he approved the checks, "and it was that simple. Not
complicated." He did not intend to charge interest on the instant credit; "[i]t was an
accommodation to the customer." 

 Mr. Stokes started having problems almost immediately as the checks Pharris had
deposited started to bounce. Within five to six days, Pharris's account was overdrawn by
$385,000. Pharris told Mr. Stokes that the other bank had made a mistake and that Mr.
Stokes should resubmit the checks. They bounced a second time. He met with Pharris many
times, but "[i]n every case he made promises that he never fulfilled." If he had known the
checks would bounce, Mr. Stokes would not have given Pharris instant credit. Mr. Stokes
"got his tail chewed out" because he approved the instant credit. Pharris did deposit over a
million dollars at Bank One, but the net charge-backs were $384,000. 

 Based upon this evidence, the trial judge once again denied bail. The defense attorney
argued, "It should be obvious to the court what's happening here is the prosecution is trying
to serially file the cases in order to prevent bail. And that defeats the purpose [for which]
Article One, Section 11(a) was written." The State responded, "We keep filing cases on Mr.
Pharris because he was very active before and after he was on bond in Cause No. 0991356. 
The evidence we offered previously at the first no-bond hearing in 1010543 showed that Mr.
Pharris had acquired in the previous two years, 10 to 15 million dollars from banks, some
locally, some across the state of Texas by fraud." The defense attorney remarked that
"There's no evidence of that in this record, Judge." (3) The prosecutor then stated the
following:

 And Judge, yes, there are going to be more charges. It's taking a long time to
get all these records. There are many, many other institutions involved. We're
acquiring the records just as fast as we can. It's very difficult to investigate a
case like this after you arrest Mr. Pharris on December 15th, but that's what
we're trying to do and it's not our fault that Mr. Pharris has defrauded so many
people of so much money in so many places. And I just want to point out to
the Court the record as it now stands shows that Mr. Pharris is in control of
valuable family assets of more than 30 million dollars. ... The evidence is also
that Mr. Pharris has obtained more, probably approaching 15 million dollars
from financial institutions in the instant matter and the previous matter and
other matters over the last couple of years. And the evidence is that Mr.
Pharris, if I recall correctly, we introduced at the last bond hearing evidence
that he takes eight and 9,000 dollar charter jet flights wherever he would like. (4)
I would ask the Court to maintain his bond at no bond. We'll file those other
cases as soon as we can get them together. There are going to be many. It is
going to be a lot. ... The rule of thumb in Harris County, Texas, that the
District Attorneys operate under, per the Judges, is twice the amount of the
fraud. Well, the evidence here is that Mr. Pharris has got probably 45 million
dollars in assets and has stolen more than probably 15 million dollars.


The defense attorney responded, "This is a charade. They're trying to deny him bail. 
They're trying to deny him bail simply because they think he's a thief and that's not what the
Constitution says." On February 21, 2005, the trial court signed the order to hold Mr. Pharris
at "no bond" for another sixty days. Pharris filed a notice of appeal that day.

 There was a final hearing on March 1, 2005, during which Mr. Pharris's attorney
stated that he was ready to try the first case, the forgery case, which was the predicate offense
for obtaining the "no bond" in this, the third case. The State declined to go forward on that
case. "So what we have here is a situation in where the State is seeking to hold Mr. Pharris
without bond where the predicate offense, the offense for which he was on bond when the
new offense was allegedly committed, the State has no intention of trying."

 The prosecutor responded that 

 Mr. Pharris is a convicted felon. He has done federal and state time. ... [The
original forgery charge] may be part and parcel of a very large fraud Mr.
Pharris has committed against financial institutions across Texas and in Harris
County, Texas over the last couple of years and will probably be better
prosecuted, a better theory for the State would be in a larger comprehensive
felony theft or engaging in organized criminal activity to commit theft
indictment which I hope to file in the next several weeks to a month or so. ...
I'm not saying the case is not prosecutable. I'm just saying I don't think it's
the best possible theory. I think we're doing a lot of other work and are
looking to file a very large case in the near future that might include the
allegations we filed in 1010543, 1016730. ... They're all going to involve Mr.
Pharris furnishing fictitious financial statements showing himself and his
family in a large family trust to be worth many, many millions of dollars. It's
going to be our contention that those are all false, They're all going to be
interrelated.


The trial judge then stated, 

 So whether the case is set for trial or not, whether it's ever reached or not,
whether it's dismissed ultimately, as far as the Court's decision to hold Mr.
Pharris without bond, it has no part in that decision. So the fact--however you
all interpret this, you guys and gals at the Court of Criminal Appeals, if in fact
ultimately Mr. Turbeville dismisses the case, if he doesn't wish to go forward
on prosecuting the case, that is not part of my decision in deciding to hold the
defendant without bond. So that fact, however you interpret it, did not play a
part in my decision.


 In its brief to this Court, the State's only argument is that the appeal in this, the Bank
One case, is moot because the sixty-day "no bond" period automatically expired and the trial
judge subsequently set a bond of $500,000 on April 14, 2005. The present case remains
unindicted.

 On May 26, 2005, Mr. Pharris's attorney filed a Motion to Supplement Record with
Recent Events in which he states that, as of April 14, 2005, Mr. Pharris had a total bail of
$700,000. The motion also states that a fourth charge, alleging felony theft occurring
between July 6 and October 19, 2004, was filed against Mr. Pharris on April 15, 2005, the
day after the most recent "no bond" order expired. A file-stamped copy of that charging
document is attached to the motion. The State requested yet another "no bond" order. The
motion states that the trial court denied that request and set bail on the most recent case at
$100,000, bringing the current total bail to $800,000. (5) 

II.


 The first question that we must address is whether the present appeal has become
moot because the "no bond" order in this particular cause number has expired and the trial
court set bail at $500,000 on April 14, 2005. A case that is moot is normally not justiciable. (6) 
One exception to that general rule is when a claim is "capable of repetition, yet evading
review." The United States Supreme Court has said that "the 'capable of repetition but
evading review' doctrine [is] limited to the situation where two elements combine: (1) the
challenged action was in its duration too short to be fully litigated prior to its cessation or
expiration, and (2) there was a reasonable expectation that the same complaining party would
be subjected to the same action again." (7) We have adopted and applied this doctrine
ourselves, (8) as has the Texas Supreme Court. (9) 

 Under the Texas Constitution, a "no bond" order filed in a non-capital felony case
committed while the defendant is on bail for a prior felony for which he has been indicted
is automatically set aside after sixty days unless the defendant requests a continuance. (10) Sixty
days is normally too short a time period in which to fully and fairly litigate a "no bond" order
even though that "appeal shall be given preference by the Court of Criminal Appeals." (11) The
clock begins ticking from the date of the hearing, and keeps ticking during the filing of the
clerk's and reporter's records and the briefs by both the State and defendant, the submission
of the case to this Court, and issuance of an opinion by the Court. Through no fault of the
defendant, the "no bond" order in this case expired more than a month before the case was
formally submitted to this Court. (12) The delay cannot be attributed to Mr. Pharris. This case
meets the first prong of the exception.

 This case also meets the second prong of the exception because the prosecutor stated
on the record during the most recent "no bond" hearing that "there are going to be more
charges,"and "[w]e'll file those other cases as soon as we can get them together. There are
going to be many. It is going to be a lot." Given the documented history thus far, there is
a reasonable expectation that the State will continue to file additional charges against Mr.
Pharris and continue to request "no bond" orders. (13)

 We therefore conclude that we have jurisdiction to address the merits of this appeal
under the "capable of repetition, yet evading review" exception to the mootness doctrine.

III.


 Article I, section 11 of the Texas Constitution provides, in part, that "All prisoners
shall be bailable by sufficient sureties unless for capital offenses, when the proof is
evident." (14) The power to deny bail cannot and "will not be used as an instrument of
oppression." (15) The Interpretative Commentary to this constitutional provision explains that

 Bail functions as a complement to the Anglo-American presumption of
innocence by permitting a person charged with a criminal offense to regain his
liberty with some assurance of his presence at trial, by requiring him to give
security, subject to forfeiture, if he fails to appear and answer before the proper
court on the accusation brought against him. (16)


Although pretrial bail may be denied in some non-capital cases for a short period of time, a
stratagem of serial charging at sixty-day intervals may not be used as a subterfuge to
imprison a citizen who, though accused of crime, is still presumed innocent under the law. 
As this Court has previously noted, the "exceptions to the constitutional right to bail [contain]
the seeds of preventive detention urged by many to be abhorrent to the American system of
justice." (17) It is for this reason that the provisions contained in Article I, Section 11a of the
Texas Bill of Rights "contain strict limitations and other safeguards" (18) to ensure that bail is
not used as an instrument of oppression. (19) 

 As this Court carefully set out in Neuenschwander v. State, (20) before a person accused
of a non-capital felony committed while on bail for a prior felony for which he has been
indicted, the following sequence of events must occur:

 "1. A defendant must be indicted for a felony and be out of jail on bond;


 2. A defendant must be then accused of committing, while on that bond, a felony
less than capital in this state;



 A defendant must be arrested on the accusation in 2;

 A district judge must hold a hearing wherein the state must show substantial
evidence of the defendant's guilt for the felony in 2 and the district judge must
enter an order denying bond, all within seven days of the defendant's arrest in
2." (21)



 When denial of bail under this constitutional provision is challenged, the State bears
the burden of affirmatively showing compliance with the limits and safeguards of Section
11a. (22) Furthermore, we are required to interpret Section 11a as favoring a defendant's access
to bail, and we strictly construe all of its provisions in favor of bail. (23)

 In this case, a time line helps set the events in perspective.


 
 June 17, 2004-State indicts Pharris for forgery in Cause No. 991356. Bail set
at $100,000; 

 June 27, 2004-Pharris makes bail and is released;

 July 6-October 19, 2004-Pharris allegedly engages in theft from Southwestern
Bank;

 September 15-October 6, 2004-Pharris allegedly engages in organized
criminal activity by committing theft from Bank One;

 November 1-November 30, 2004-Pharris allegedly engages in organized
criminal activity by committing theft from Hibernia Bank;

 December 15, 2004-State charges Pharris for Hibernia Bank transactions
(Cause No. 1010543) and requests "no bond" order;

 December 21, 2004-"No bond" hearing on Hibernia Bank charge; Pharris
ordered to be held without bond for sixty days;

 February 14, 2005-Hibernia Bank "no bond" order expires; trial court sets
bond of $100,000;

 February 14, 2005-State charges Pharris for Bank One transactions (Cause No.
1016730) and requests "no bond" order;

 February 18, 2005-"No bond" hearing on Bank One charge;

 February 21, 2005-Trial court signs "no bond" order on Bank One charge;
Pharris files notice of appeal;

 March 1, 2005-Pharris announces "ready for trial" on forgery indictment filed
June 17, 2004; State suggests that it will never try forgery indictment;

 April 14, 2005-Bank One "no bond" order expires; trial court sets bond of
$500,000;

 April 15, 2005-State charges Pharris with theft from Southwestern Bank, and 
requests "no bond" order;

 April 20, 2005-Trial court denies "no bond" order; sets bail at $100,000;

 May 19, 2005-Pharris still in jail.

 


 Section 11a explicitly states that an order denying bail must be issued "within seven
calendar days subsequent to the time of the incarceration of the accused." (24) In
Neuenschwander, we equated the constitutional term "incarceration" with "arrest." (25) Mr.
Pharris was most recently "incarcerated" on December 15, 2004. He has been "incarcerated"
ever since. Strictly construing Section 11a, as we must, we hold that only a "no bond" order
entered within seven days of that date-the actual arrest date-is valid under the Texas
Constitution. Mr. Pharris is not "incarcerated" or "arrested" every time the State files a new
charge against him and brings him from the jail into the courtroom for another "no bond"
hearing. Of course, if Mr. Pharris had been released from jail on bond on February 14, 2005,
and he then committed a new felony offense, the State could re-incarcerate him and use the
June 17, 2004, indictment as a trigger to a new "no bond" order signed within seven days of
this subsequent incarceration. At that point, Pharris would still be "on bond" for the forgery
indictment (as well as for the new charges), but to trigger the "no bond" provision of the
constitution, the most recent offense must be committed after the most recent bonding out
of jail. To allow otherwise would defeat the presumption in favor of bail and the
constitutional preference for bail. The trial judge was correct when he orally expressed his
original skepticism of this procedure; he erred in signing a "no bond" order in the Bank One
criminal complaint. 

 Mr. Pharris argues that "[t]his Court should not let the State's conduct in the above
cases to go unnoticed or unaddressed. On the record presented and the information provided
here, this court should sanction the State's conduct by ordering that bail in the case on appeal
[Cause No. 1016730, the Bank One complaint] should be reduced to $100,000." A reduction
of bail or an increase of bail is not an instrument to be used to "sanction" either the accused
or the State. Bail is intended to ensure a defendant's presence at trial and to ensure the
community and victim's safety during the pendency of proceedings. And that is a matter for
the trial court's exercise of a conscientious discretion, which will be guided by the legal
principles that we have discussed. Mr. Pharris's appropriate recourse is to address his
request to the trial court, retaining his right to an expedited review by this court if that should
be necessary.

 We therefore deny appellant any additional relief and remand the case to the trial court
for further proceedings.


Cochran, J.

Delivered: June 22, 2005

Publish 
1. Although seemingly inapplicable to the Hibernia Bank charge that was the subject of the
December "no bond" hearing, Mr. Kuo's testimony is relevant to the fourth theft charge filed
against Mr. Pharris on April 15, 2005.
2. This indictment appears to charge a simple theft because it does not allege any criminal
combination under Tex. Penal Code § 71.02(a).
3. At the risk of boring the patient reader, we have taken great pains to set out all of the
evidence from both "no bond" hearings in this opinion.
4. This Court has been unable to find any testimony concerning any plane flights by Mr.
Pharris in the record.
5. Also attached to this motion is a letter dated April 14, 2005, that appears to be written
on official Harris County District Attorney stationary, is purportedly signed by Russel Turbeville,
Assistant District Attorney, and is addressed "To Harris Area Bondmen [sic]" This letter reads:

 I am currently prosecuting Mr. Pharris in the above causes. His bonds in 1010543
and 1016730 of $100,000 and $500,000 are currently unmade. The criminal
allegations against Mr. Pharris concern his presenting alleged false financial
statements and pledging the assets of a purported large family trust originating in
Hillsboro, Hill County Texas. Further, that his mother, Miriam Pharris, of
Hillsboro also guarantees many of the loan obligations.

 While I don't want to interfere with Mr. Pharris [sic] right to make any legitimate
bond, I would request that you contact me before taking any purported valuable
bond collateral. There are several pending bankruptcy actions concerning several
of Mr. Pharris [sic] purported companies. Further Hill County deed records
reflect more than $5,000,000.00 in recent abstracted judgments against the family
ranch or farm which appears to be many fold the actual value of the property.

 Thank you in advance for your cooperation.

This letter, however, does not appear to come from the official court records in this case; it is not
certified by the clerk of the court; and the motion itself does not contain a sworn affidavit
attesting to the authenticity or provenance of the letter. Therefore, we will not consider
documents that are attached to unsworn motions filed directly in this Court for the truth of the
matter asserted. See Jack v. State, 149 S.W.3d 119, 121 (Tex. Crim. App. 2004).
6. See Criner v. State, 878 S.W.2d 162, 163-64 (Tex. Crim. App. 1994) (appeal of trial
court's order denying pretrial bail moot after sixty days); see also Duncan v. Evans, 653 S.W.2d
38, 41 (Tex. Crim. App. 1990) (Onion, P.J., dissenting) (noting that when order that is subject of
appeal "has been vacated ... the question presented is moot. There is not presently a justiciable
controversy. Normally when the question becomes moot the case is dismissed").
7. Weinstein v. Bradford, 423 U.S. 147, 149 (1975); see also Murphy v. Hunt, 455 U.S.
478, 482 (1982).
8. See Ex parte Nelson, 815 S.W.2d 737, 739 (Tex. Crim. App. 1991) (setting out the
"capable of repetition, yet evading review" exception to the mootness doctrine and applying it to
parolee's habeas corpus allegation concerning sufficiency of basis for detention pending decision
to revoke parole).
9. See Williams v. Huff, 52 S.W.3d 171, 185 (Tex. 2001) (concluding that inmates' claim
that challenged constitutionality of religious-education program at county jail did not meet the
"capable of repetition, yet evading review" exception to the mootness doctrine because inmates
did not meet the capable-of-repetition element, as it was speculative as to whether and when they
would be charged with a jail-time crime).
10. Tex. Const. art. I, § 11a(a).
11. Id.; see Criner, 878 S.W.2d at 167 (noting, but declining to address, defendant's
contention that this Court's "docket is such that every appeal from an order denying bail will be
moot before the appeal can be resolved").
12. Mr. Pharris filed written notice of an expedited direct appeal in the trial court on
February 21, 2005, the same day that the trial court signed the "no bond" order. Although his
brief was not due until April 29, 2005, Mr. Pharris filed his appellate brief on March 28, 2005. 
He also filed a motion requesting that his appeal be accelerated, but this Court denied that motion
on April 12, 2005, two days before the "no bond" order expired. The State's brief was not due
until April 30, 2005, and it was filed on April 29, 2005, at which time the "no bond" order had
already expired. The case was not formally submitted to this Court until May 25, 2005.
13. See Securities & Exchange Comm'n v. Sloan, 436 U.S. 103, 108-09 (1978) (case not
moot when SEC filed a series of trade suspension orders, each of which lasted less than 20 days,
and there was a reasonable expectation that stockholder would be subject to recurring injuries by
SEC continuing to file further summary suspension orders).
14. Tex. Const. art. I, § 11.
15. Taylor v. State, 667 S.W.2d 149, 151 (Tex. Crim. App. 1984).
16. Tex. Const. art. I, § 11, Interpretive Commentary. See also George E. Dix & Robert
O. Dawson, Texas Practice: Criminal Practice and Procedure § 16.01 (2d Ed. 2001)
(noting that "basic notions of fairness are compromised by the imposition of what might be
viewed as punishment upon those defendants [who are ultimately found guilty] before full and
fair inquiry is made into whether they can be proved guilty").
17. Taylor, 667 S.W.2d at 152.
18. Id.
19. Id. at 151. Other statutory provisions allow a trial court to impose reasonable
conditions of bail, both to ensure a defendant's appearance for trial and to protect the safety of
the community. See, e.g., Tex. Code Crim. Proc. arts. 17.40 (magistrate may impose any
reasonable condition of bond related "to the safety of the community"); 17.43(a) (reasonable
conditions may include home curfew and electronic monitoring); 17.44(a)(1) (reasonable
conditions may include home confinement and electronic monitoring).
20. 784 S.W.2d 418 (Tex. Crim. App. 1990).
21. Neuenschwander, 784 S.W.2d at 420.
22. Id. 
23. Westbook v. State, 753 S.W.2d 158, 159 (Tex. Crim. App. 1988) (stating that section
11a "will be strictly construed in favor of bail").
24. Tex. Const. art. I, §11a.
25. Neuenschwander, 784 S.W.2d at 420.