Dennis Joe **PHARRIS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–05–00727–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2006.

Dick DeGuerin, DeGuerin & Dickson, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Alan Curry, Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

SAM NUCHIA, Justice.

After a writ of habeas corpus hearing, the trial court set bail for appellant, Dennis Joe Pharris, at $2.5 million. This amount was later reduced to $1,000,000. Appellant's sole issue on appeal is that article 17.151 of the Code of Criminal Procedure[1] compels this Court to order that appellant be released on a personal bond, or, alternatively, that bond should be set at no more than $500,000. For the reasons that follow, we reverse the trial court's order and render judgment that bail be set at $500,000.

## BACKGROUND

The facts of this case involve a number of financial transactions over the course of the past two years. We initially note that the Court of Criminal Appeals heard a direct appeal from the trial court regarding a claim made by appellant under Article 1, section 11a of the Texas Constitution.[2] Because the facts, as relayed by the Court of Criminal Appeals, form the first half of the factual backdrop of this appeal, we rely heavily on the facts as recited in that opinion to tell that portion of the facts.

On June 17, 2004, the State indicted Mr. Pharris for the felony offense of forgery of a United States government instrument (Cause No. 991356). Bond was originally set at $10,000 and later increased to $100,000. Mr. Pharris made bail and was released on June 27, 2004.

*Pharris v. State,* 165 S.W.3d 681, 683 (Tex. Crim.App.2005).

On December 15, 2004, the State filed a second criminal complaint stating that appellant had engaged in "organized criminal activity" with various people to commit theft of a local bank of more than $200,000. *Id.* "This complaint contained an enhancement paragraph alleging that Pharris had been convicted in 1993 of wire fraud in a Texas federal district court." *Id.* "After a hearing on December 21, 2004, the trial court denied bail in this second case because the State had alleged that this of-

---

1. TEX.CODE CRIM. PROC. ANN. art. 17.151 (Vernon 2003).

2. *Pharris v. State,* 165 S.W.3d 681 (Tex.Crim.App.2005).

fense was committed while Pharris was on bond for the first case, the forgery charge."[3] *Id.* After the December 21 hearing, the trial court denied bail on the first charge and set bail at $100,000 on the second charge. *Id.* at 684. However, later that same afternoon (December 21, 2004), the State filed a third charge against appellant for theft of money from yet another bank. *Id.* Another bond hearing was set for February 18, 2005. *Id.*

"Based upon this evidence, the trial judge once again denied bail." *Id.* "The defense attorney argued, 'It should be obvious to the court what's happening here is the prosecution is trying to serially file the cases in order to prevent bail. And that defeats the purpose [for which] Article One, Section 11(a) was written.'" *Id.* at 685. On February 21, 2005, the trial court signed the order to hold Mr. Pharris at 'no bond' for another sixty days. "Pharris filed a notice of appeal [in the Court of Criminal Appeals] that day." *Id.* at 686.

On June 22, 2005, the Court of Criminal Appeals released its opinion in *Pharris. Id.* at 681. However, two days before that, the State filed a complaint combining all the previous charges into one comprehensive case. The trial court set bail at $10,000,000. A writ of habeas corpus hearing was held on July 15th, at which two Harris County bail bondsmen testified. One testified that, after preliminary research, he would post bail for appellant, at a maximum, for $100,000–$125,000; the other testified that he performed extensive research and would post bail for appellant up to a maximum of $500,000.

The second bail bondsman, David Schmidt, testified that he: (1) investigated judgments against appellant and his family; (2) researched what was in the Pharris Family Trust; (3) had discussions with appellant's family attorney, Steve Smith, as to certain property owned by appellant or appellant's family that could be used to secure a bond; (4) stated that he would not proceed if he did not have assurances that the title was clear from encumbrances; (5) stated that he could obtain a title policy on some property "that was related to [appellant's deceased father]"; (6) researched the value of that property; and (7) discussed with some bankers, who had knowledge of the area where the property is located, what amount the property could be foreclosed for if he needed to sell the land.

The record also reflects that appellant is in involuntary bankruptcy and made bond in a fraud case from 1993 brought by federal prosecutors. After the hearing, the trial court reset appellant's bail at $2.5 million. On September 29, 2005, 100 days after the State filed a charge of engaging in organized criminal activity that combined all the previous charges into one, the State obtained an indictment on that charge. In October, the trial court reduced appellant's bail to $1,000,000 in the current case.

## DISCUSSION

Appellant's sole issue for review is whether he should be released on personal bond under article 17.151 of the Code of Criminal Procedure, or, alternatively, that

---

3. Apparently, part of appellant's alleged *modus operandi* was to pose as a wealthy businessman who controlled a family trust worth about $30 million. He would then ask for a substantial line of credit and draw it down, ostensibly paying it off with family trust depository checks. The checks, because they were printed from appellant's home (without the usual seal that expedites the check-cashing process) would take an unusually long time to attempt to clear. However, appellant's checks would bounce and the bank would be out the money loaned. *See Pharris*, 165 S.W.3d at 682–88.

this court determine what the correct bail amount should be under this same article of the Code.[4] *See* Tex.Code Crim. Proc. Ann. art 17.151 (Vernon 2003). However, as a preliminary matter, the State makes a number of arguments concerning the jurisdiction of this Court. Therefore, we analyze these arguments first.

### *Jurisdiction*

■ Initially, the State argues that this appeal should be dismissed as moot because, after the appeal was filed, the trial court issued an order on October 11 reducing the bail amount from $2,500,000 to $1,000,000 and the appellant did not file a notice of appeal regarding this order. Accordingly, the State argues that we lack jurisdiction to hear this appeal. We disagree.

In this case, appellant filed a document with the court that was sufficient to constitute a notice of appeal regarding the trial court's October 11, 2005 order. Where an appellant has timely filed a document with the trial court that demonstrates his desire to appeal, that document should be construed as a notice of appeal. Tex.R.App. Proc. 25.2(c)(2) ("notice is sufficient if it shows the party's desire to appeal from the judgment or other appealable order"); *see also Jones v. State,* 98 S.W.3d 700, 703 (Tex.Crim.App.2003) (holding that "contemporaneous presentation of the pro se notice with a motion to withdraw by trial counsel" was sufficient to serve as notice of appeal); *Miles v. State,* 842 S.W.2d 278, 279 n. 1 (Tex.Crim.App.1989) (written appeal bond showed desire of defendant to appeal and was sufficient to constitute notice of appeal); *Palma v. State,* 76 S.W.3d

638, 641–42 (Tex.App.-Corpus Christi 2002, no pet.) (holding that letter from appellant asking court whether he had been appointed appellate attorney demonstrated defendant's desire to appeal and was sufficient to serve as notice of appeal); *Cooper v. State,* 917 S.W.2d 474, 477 (Tex.App.-Fort Worth 1996, pet. ref'd) (concluding that request filed by defendant for free record constituted demonstration of desire to appeal and was sufficient to serve as notice of appeal); *Buchanan v. State,* 881 S.W.2d 376, 378 (Tex.App.-Houston [1st Dist.] 1994), *rev'd on other grounds,* 911 S.W.2d 11 (Tex.Crim.App.1995) (holding motion to obtain clerk's and reporter's record was enough to demonstrate desire to appeal and was sufficient to serve as notice of appeal); *Massey v. State,* 759 S.W.2d 18, 19 (Tex.App.-Texarkana 1988, no pet.) (concluding that written request for copy of record and appointment of appellate counsel was enough to demonstrate desire to appeal). *Cf. Ashorn v. State,* 77 S.W.3d 405, 408 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating that filing of appeal bond by itself was not enough to demonstrate desire to appeal).

In this case, appellant's "Motion to Supplement Record on Appeal" clearly evinces a desire to appeal and acts as a sufficient notice of appeal. After the trial court set bail at $1,000,000 on October 11—an amount considerably higher than appellant had requested—appellant filed a "Motion to Supplement Record on Appeal" in the trial court noting the trial court's reduction, but stating that he would "like to supplement record on appeal" and show that "1,000,000 is tantamount to no bail." Appellant's motion also specifically requested that the trial court's order setting

---

4. We note that while there is a split among the intermediate appellate courts as to whether such courts have jurisdiction in regard to direct appeals from pre-trial bail rulings, it has long been the law in this district that we exercise jurisdiction over pre-trial bail rulings. *See Clark v. Barr,* 827 S.W.2d 556, 557 (Tex.App.-Houston [1st Dist.] 1992, orig. proceeding) (citing *Primrose v. State,* 725 S.W.2d 254, 256 n. 3 (Tex.Crim.App.1987)).

bail be made part of the appellate record in this case. Therefore, we reject the State's argument that this appeal is moot because a second notice of appeal was not filed.

The State also argues that because appellant has been indicted in this case, article 17.151 ceases to apply, thereby rendering his appeal moot. The State cites no authority for this proposition, and, in fact, the Court of Criminal Appeals has held that article 17.151 requires the State to be ready within 90 days of defendant's "arrest"[5] or he (1) must be released on personal bond or (2) have bail reduced. *Jones v. State*, 803 S.W.2d 712, 717 (Tex.Crim. App.1991); *see also Kernahan v. State*, 657 S.W.2d 433, 434 (Tex.Crim.App.1983) (holding that the terms of article 17.151 are mandatory). The State at no point claims that it was ready within 90 days. Therefore, we reject this argument as well.

The last of the State's preliminary arguments is that appellant has not preserved error because he did not rely on article 17.151 at trial. Again, we reject the State's argument: as appellant quite rightly points out, it was the failure of the State to indict him within 90 days that invoked article 17.151. Moreover, appellant's habeas corpus hearing occurred on July 15, 2005—at this point, the 90-day limit had not elapsed so the argument was not colorable at that juncture.

We decline to hold that this case is moot. Rather, we find that we have jurisdiction over this appeal. We turn, therefore, to the merits.

### *Article 17.151*

■ Article 17.151 of the Code of Criminal Procedure provides in the relevant part:

Art. 17.151. Release because of delay

Sec. 1. A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony.

TEX.CODE CRIM. PROC. ANN. art. 17.151 (Vernon 2005). Appellant's central issue is whether article 17.151 compels this Court to order that appellant be released on personal bond or have his bail amount reduced. The heart of the State's argument—that if one has not attempted to make bail, no relief is available even if the time limit set out in article 17.151 has expired—relies on a Texarkana Court of Appeals case. *See Smith v. State*, 161 S.W.3d 191 (Tex.App.-Texarkana 2005, orig. proceeding). The State urges us to follow the *Smith* Court's lead. There, the court rejected the appellant's request for reduced bail because appellant had not previously attempted to make the bail amount set for him. *Id.* at 193.

The State's argument is without merit. Section 17.151 is mandatory. *See Rowe v. State*, 853 S.W.2d 581, 583 (Tex.Crim.App. 1993). If the State is not ready for trial within 90 days after commencement of detention for a felony, the trial court has two options: to release the defendant upon personal bond or to reduce the amount of bail. *See id.* at 583; *see also* TEX.CODE CRIM. PROC. ANN. art 17.151. Moreover, the trial court "*must* reduce bail to an amount that the record reflects the accused *can*

---

5. Both appellant and the State concede that for purposes of this appeal, appellant was under "arrest" when the State formally charged appellant with multiple counts of organized criminal activity on June 20, 2005.

*make* in order to effectuate release." *Id.* at 582 n. 1 (second emphasis added). *Rowe* has not been modified in any way by the Court of Criminal Appeals, and other intermediate appellate courts have noted that *Rowe* controls this question. *See Ex Parte Ancira,* 942 S.W.2d 46, 47 (Tex. App.-Houston [14th Dist.] 1997, no writ); *see also Ex Parte Tellez,* No. 04–04–00897–CR, 2005 WL 1277660, at *1 (Tex.App.-San Antonio Jun. 1, 2005, orig. proceeding) (not designated for publication). Therefore, we reject the State's argument.

Because we must set bail at an amount appellant can make, we look to the evidence in the record. *See Rowe,* 853 S.W.2d at 582 n. 1. The bail bondsman who performed extensive research into appellant's finances testified that he would post a bail bond for appellant up to a maximum of $500,000. We take this to be evidence of a bond amount appellant could produce; indeed, appellant requested this amount of bail. We hold that the trial court erred in not following *Rowe's* dictates that it must set bail at an amount appellant can make. The evidence shows that the appellant can make bond in the amount of $500,000.

## CONCLUSION

We reverse the trial court's order setting bail at $1,000,000 and render judgment that bail be set at $500,000.

Justice KEYES concurring.

EVELYN V. KEYES, Justice, concurring.

I concur in the judgment. I write separately to address the State's mootness argument and to clarify this Court's jurisdiction over this appeal. Appellant timely appealed from a habeas corpus hearing held on July 15, 2005, in which appellant's bail was set by the trial court at $2,500,000. The State argued that the appeal should be dismissed as moot because on September 29, 2005, after the appeal was filed, the trial court consolidated the original cases against appellant, held another bond hearing, and issued an order on October 11, 2005 reducing appellant's bail to $1,000,000.

The State argued that the trial court's reduction in appellant's bail from $2.5 million to $1,000,000 on October 11 acted to moot appellant's appeal. The panel opinion fails to address this argument. I believe it is important to address the State's mootness argument and to emphasize that the October 11 order did *not* moot the pending appeal. This Court had jurisdiction over the appeal prior to entry of the October 11 order, it did not lose jurisdiction because of the entry of that order, and appellant's supplementation of the record with the October 11 order merely entitled this Court to consider that order in addition to the matters already properly before it.

The State notes that it made a similar mootness argument before the Court of Criminal Appeals and that it was rejected there. *See Pharris v. State,* 165 S.W.3d 681, 689 (Tex.Crim.App.2005). The State is correct. Its mootness argument effectively asks us to contravene the Court of Criminal Appeals' holding in *Pharris* that the practice about which appellant was complaining in his direct appeal—namely the State is continuing to file new charges and seek new hearings on his bail without either trying him or setting a bond he can make—does not moot a pending appeal. *See id.* at 688–89. The Court of Criminal Appeals not only rejected that mootness argument, it admonished the State for its "stratagem of serial charging at sixty-days intervals," further noting that such prosecutorial strategy "may not be used as a subterfuge to imprison a citizen who, though accused of crime, is still presumed

innocent under the law." *Id.* at 689. Thus, to the extent the panel opinion may be construed as attributing our jurisdiction solely to the supplementation of the appellate record with the October 11 order, I wish to make clear that any such construction of our jurisdiction would be incorrect.

As the Court of Criminal Appeals stated in *Pharris,* a case that is moot is non-justiciable. *Id.* at 687. However, there is an exception for cases presenting issues that are 'capable of repetition but evading review.' *Id.* at 688. Both the Texas Court of Criminal Appeals and the United States Supreme Court have held that

> [T]he "capable of repetition but evading review" doctrine [is] limited to the situation where two elements combine: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Id.* (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)). In determining that the practice challenged by appellant in this case survives a mootness challenge, the Court explained:

> Under the Texas Constitution, a "no bond" order filed in a non-capital felony case committed while the defendant is on bail for a prior felony for which he has been indicted is automatically set aside after sixty days unless the defendant requests a continuance. Sixty days is normally too short a time period in which to fully and fairly litigate a "no bond" order even though that "appeal shall be given preference by the Court of Criminal Appeals." The clock begins ticking from the date of the hearing, and keeps ticking during the filing of the clerk's and reporter's records and the briefs by both the State and defendant,

the submission of the case to this Court, and issuance of an opinion by the Court. Through no fault of the defendant, the "no bond" order in this case expired more than a month before the case was formally submitted to this Court. The delay cannot be attributed to Mr. Pharris. This case meets the first prong of the exception.

This case also meets the second prong of the exception because the prosecutor stated on the record during the most recent "no bond" hearing that "there are going to be more charges," and "[w]e'll file those other cases as soon as we can get them together. There are going to be many. It is going to be a lot." Given the documented history thus far, there is a reasonable expectation that the State will continue to file additional charges against Mr. Pharris and continue to request "no bond" orders.

*Id.* at 688–89 (citations omitted).

After this appeal was filed, the State continued the practice complained of in *Pharris.* Specifically, on September 29, 2005, the State filed a combined charge against appellant and obtained an indictment, whereupon the trial court held a new bond hearing in October 2005, and, by its order of October 11, reduced appellant's bond to $1,000,000—an amount appellant still could not meet according to the evidence in the appellate record. Appellant properly appealed from the order on the July 15, 2005 hearing setting appellant's bail at $2,5000,000 and supplemented the record with the October 11 order. Under both the law of the case and controlling law as stated in *Pharris,* this appeal is not moot.