**Reversed and Rendered and Memorandum Opinion filed March 28, 2019.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00955-CR
NO. 14-18-00957-CR
NO. 14-18-00958-CR
NO. 14-18-00959-CR
NO. 14-18-00960-CR
NO. 14-18-00961-CR
NO. 14-18-00962-CR

**EX PARTE JUAN M. HERNANDEZ**

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause Nos. 1607513, 1607514, 1607515, 1607516, 1607517,
1607518, & 1607519**

## MEMORANDUM OPINION

The sole question in this case is whether the trial court abused its discretion by setting bail at the aggregate amount of $1,825,000. Based on the unique facts and circumstances of this case, we conclude that the trial court's assessment of bail is

excessive. We reverse the trial court's order denying writ of habeas corpus and lower bail to an aggregate amount of $630,000.

## BACKGROUND

Appellant is currently awaiting trial in seven separate felony charges. In three of the charges, appellant was indicted for possession of a controlled substance with intent to deliver. In two of the charges, appellant was indicted for unlawful possession of a firearm by a felon. Appellant was also indicted for aggravated robbery and tampering with evidence. Each offense is alleged to have occurred between January and August 2018.

In January appellant was indicted for unlawfully possessing a firearm after being convicted of the felony offense of possession of a controlled substance four years earlier. Because appellant had been previously convicted of possession of a controlled substance and aggravated robbery, the State requested a high bail amount. The trial court set bail at $20,000, which appellant posted.

While out on bail, appellant was indicted for aggravated robbery alleged to have occurred in March 2018. In April when appellant was arrested on the aggravated robbery warrant he was also charged with two counts of possession of a controlled substance with intent to deliver. The State requested that appellant be held with no bail because he was alleged to have committed these offenses while on bond for the offense alleged to have occurred in January. The trial court initially ordered appellant held without bail. Subsequently, the trial court revoked appellant's bond on the January possession of a firearm charge, and increased appellant's bail amount on that charge to $40,000. The trial court further set appellant's other bail amounts at $100,000 each for the aggravated robbery charge and the two possession charges for a total of $340,000. The court also modified the conditions of appellant's bond regarding travel. Appellant was given permission to travel from his residence to his

2

attorney's office for scheduled meetings. Appellant was required to wear a GPS monitor to show compliance with this condition. Appellant posted the $340,000 bail.

While appellant was under house arrest police executed a search warrant at his house. After execution of the search warrant appellant was indicted for another count of possession of a controlled substance with intent to deliver, another count of possession of a firearm by a felon, and tampering with evidence. The trial court subsequently set appellant's bail amounts as follows:

| Charge | Bail Amount |
|---|---|
| Unlawful possession of a firearm by a felon | $150,000 |
| Aggravated robbery | $350,000 |
| Possession of controlled substance with intent to deliver | $350,000 |
| Possession of controlled substance with intent to deliver | $350,000 |
| Tampering with evidence | $150,000 |
| Unlawful possession of a firearm by a felon | $150,000 |
| Possession of a controlled substance with intent to deliver | $350,000 |

The aggregate amount of the bail amounts set was $1,825,000.

Appellant subsequently filed applications for writ of habeas corpus in each case complaining that the aggregate amount of the bail set was unreasonable. The trial court held a hearing at which the parties agreed to offer evidence through the use of written affidavits rather than live testimony.

Appellant attached two affidavits to his applications for writ of habeas corpus.

3

Those same affidavits were admitted into evidence at the writ hearing. The first affidavit, signed by Marcos Antonio, a bail bondsman, stated that Antonio had reviewed the financial records of appellant and appellant's immediate family. Antonio averred that appellant was incapable of posting a $1,825,000 bond. Antonio stated that appellant could afford a $250,000 bond.

The second affidavit was signed by Yesenia Yepez, appellant's girlfriend. Yepez stated that she lived with appellant and they have a four-month-old child. Yepez was not working at the time she signed the affidavit. If she returned to work, she could earn $2500 to $3000 per month. Yepez owns a vehicle valued at approximately $10,000. Yepez does not own a home. Before appellant's arrest he worked as a delivery driver delivering parts for an "auto shop." Appellant does not own a vehicle or a home. Appellant's mother can make a minimal contribution to bail, but also does not own a home. Yepez echoed that appellant could not pay a $1,825,000 bond but could afford a $250,000 bond.

At the hearing appellant's counsel argued that, according to Harris County Pretrial Services, while originally out on bond appellant complied with the conditions of bond requiring him to wear a GPS monitor and maintain negative drug test results. Counsel stated that the original aggravated robbery charge involved multiple defendants, which would most likely lead to unusual delay in bringing that charge to trial. Counsel stated that appellant had never missed a court date.

The State offered no evidence but argued that the trial court should not reduce the bond, emphasizing that appellant stands indicted for seven felony offenses from four different transactions. The State argued that the alleged aggravated robbery involved the shooting of several individuals including small children "during an alleged drug raid." The State argued that a high bond was necessary because appellant was facing a punishment range of fifteen years to life in prison on three of

the seven charges. The State alleged that when executing the search warrant officers recovered 89 grams of methamphetamine, and approximately $70,000 in cash.

The trial court denied appellant's applications for writ of habeas corpus and declined to reduce appellant's bail amount.

## ANALYSIS

### I.     Standard of Review

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Castillo–Lorente*, 420 S.W.3d 884, 887 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1.     The bail shall be sufficiently high to give reasonable assurance of compliance with the undertaking.

2.     The power to require bail is not to be so used as an instrument of oppression.

3.     The nature of the offense and the circumstances under which it was committed are to be considered.

4.     The ability to make bail is to be regarded, and proof may be taken upon this point.

5.     The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. art. 17.15.

In addition to these rules, case law provides that courts may consider the

5

following set of factors: (l) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; (7) the aggravating circumstances alleged to have been involved in the charged offense; and (8) whether the defendant is a citizen of the United States. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 n. 2 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

## II. Nature and Circumstances of the Alleged Offenses

When assessing the reasonableness of bail, the Court of Criminal Appeals has instructed that the "primary factors" are the punishments that can be imposed and the nature of the offenses. *See Rubac*, 611 S.W.2d at 849. In this case, appellant has been accused of committing seven felonies of varying degrees. Four of the charges are for first-degree felonies. *See* Tex. Health & Safety Code Ann. § 481.112 (possession of controlled substance with intent to deliver); Tex. Penal Code Ann. § 29.03 (aggravated robbery). The remaining three alleged offenses are third-degree felonies. *See* Tex. Penal Code Ann. §§ 37.09 (tampering with evidence); 46.04 (unlawful possession of weapon).

If convicted, appellant would face lengthy prison sentences. First-degree felonies are punishable between five and ninety-nine years' or life imprisonment. *Id*. § 12.32. Third-degree felonies are punishable between two and ten years' imprisonment. *Id*. § 12.34. And for each offense, the trial court could assess a fine of up to $10,000. Appellant's prior felony convictions raise the minimum punishment for first-degree felonies from five to twenty-five years. *Id*. § 12.42. The court could also cumulate, or "stack," the sentences if appellant is convicted in two or more cases. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a).

6

Appellant is entitled to a presumption of innocence on all charges. When setting bail, the trial court must strike a balance between this presumption and the State's interest in assuring that appellant will appear for trial. Because the charges and their consequences in the event of conviction are so serious, the trial court could have reasonably determined that bail should be set at a high amount.

In balancing the nature and circumstances of the alleged offenses against appellant's presumption of innocence we are instructed by review of other cases in which courts found much lower bail amounts sufficient.

In *Ludwig*, the defendant was alleged to have killed two people and to have threatened each of them before he killed them. *Ludwig v. State*, 812 S.W.2d 323, 324–25 (Tex. Crim. App. 1991). Ludwig also was alleged to have threatened to kill his mother-in-law. *Id*. at 325. There was little evidence of the circumstances of the alleged offenses before the court, but even considering Ludwig's threat against his mother-in-law, the court reduced his bail to $50,000.00. *See id*.

In *Martinez*, the defendant was charged with killing four people, two under six years of age, by shooting them multiple times. *Martinez v. State*, No. 14–96–01339–CR, 1997 WL 197897, at *3 (Tex. App.—Houston [14th Dist.] Apr. 24, 1997, no pet.) (not designated for publication). Martinez allegedly shot one victim six times: three shots were to the back of the victim's head and body. *Id*. This court found that the $2,000,000 bail set was excessive and remanded the case to the trial court to either deny bail or set bail in accordance with the law. *Id*.

In *Simpson*, cited by appellant in his brief, the defendant was an alleged gang member charged with capital murder for a "brutal, gang-related murder." *Ex parte Simpson*, 77 S.W.3d 894, 897 (Tex. App.—Tyler 2002, no pet.). The court described the circumstances of the alleged offense as "a violent, unprovoked killing [that] suggest[s] an appalling lack of concern for human life." *Id*. The court described

Simpson as "an individual with a violent and unrepentant nature," and affirmed the trial court's setting of bond at $600,000, less than half the amount set in this case. *Id*. at 895, 897.

Here, neither side presented any new evidence during the writ hearing regarding the nature and circumstances of the charged offenses. The State argued that children were harmed during the aggravated robbery offense but did not present any evidence that appellant shot the children. Both parties argued that multiple individuals were charged in the aggravated robbery case. When viewed alone, this factor would not support the trial court's decision to increase bail to an aggregate amount of over $1.8 million.

## III. Sufficient Bail to Assure Appearance

The next factor addresses whether the defendant is a flight risk. Here, neither the record of the writ hearing or the attached affidavits affirmatively show appellant's citizenship. At the hearing and in his brief appellant's counsel averred that appellant is a lifelong resident of Harris County and does not have a passport or relationships outside of Harris County. Yepez's affidavit states that she lives with appellant and that appellant was working as a delivery driver before his arrest.

In appellant's application for writ of habeas corpus, appellant averred that he had "faithfully appeared to every court appearance" and had been wearing a GPS monitoring device for approximately four months. Appellant's uncontroverted statements would not support a finding that appellant presents an unusual flight risk. Accordingly, this factor would also weigh against a bail amount over $1 million *Cf. Ex parte Durst*, 148 S.W.3d 496, 498 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (concluding that bail may be set at a high amount—$450,000 in that case— where the defendant jumped bail, disguised himself, fled the jurisdiction, and mentioned that he had great sums of money secreted in a non-extradition country).

8

## IV. Future Safety of the Victims and the Community

The trial court set conditions of bail requiring appellant to use a GPS monitoring device and limiting appellant's travel to a direct route between his residence and his attorney's office. There is no evidence that appellant violated these conditions. Thus, an increase in bail cannot be justified by a perceived danger to the alleged victims or community.

Drug related cases sometimes justify higher bail amounts where the defendants are foreign nationals with no local ties, or are residents of other states, or were persons who were extradited to Texas before bail was set. *See Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (affirming $2.5 million bond for defendant arrested with cocaine having a street value of $72 million in addition to evidence that defendant may flee the jurisdiction); *see also Balleza v. State*, 858 S.W.2d 545, 546 (Tex. App.—Texarkana 1993, no pet.) (affirming $250,000 bond because detainee was charged with possessing large amount of cocaine and did not produce any evidence that he could not make bail).

The State emphasizes that appellant allegedly committed further drug offenses while out on bond. This evidence supports a finding that a moderate increase in bail, at most, would be sufficient to protect the interests of the community. There is no evidence that appellant has ever failed to appear in court, or that he has a history of fleeing the jurisdiction.

## V. Instrument of Oppression

The State has not cited any cases where bail in excess of one million dollars has been affirmed on appeal. This court affirmed a bail amount of $2.5 million in a drug case under circumstances distinguishable from this case. *See Maldonado*, 999 S.W.2d at 97. In *Maldonado*, the defendant was arrested with a substantial amount

of cocaine in his possession, having an alleged street value of more than $72 million. *Id*. at 94. Testimony from the defendant's friends and family members also demonstrated that Maldonado lived in Texas for only a short time, had very few ties to Texas, as well as testimony that Maldonado might flee the jurisdiction if released on bail. *Id*. In this case, appellant has been charged with possession of large amounts of a controlled substance. Our record, however, contains no evidence of aggravating circumstances or a suggestion that appellant is a flight risk.

In *Ex parte Gonzales*, 383 S.W.3d 160, 167 (Tex. App.—San Antonio 2012, pet. ref'd), the court found that a $1.5 million bail, $300,000 less than the bail set in this case, was not excessive. *Gonzalez* is distinguishable from this case on its facts. In *Gonzalez*, the court emphasized the random nature of the "brutal offense" allegedly committed by Gonzalez and the fact that Gonzalez had worked in several states and his mother owned a home in Mexico. *Id.* at 166. The court noted that, "Gonzalez's mother still owns the house in Mexico, Gonzalez worked on the house, has relatives in Mexico, and applied for an expedited passport." *Id.*

Far more numerous are the cases in which appellate courts have disapproved of bail amounts in excess of $1 million. *See Melartin*, 464 S.W.3d at 795 ($7.2 million bail reduced to $900,000).[1] "The reason for the dichotomy should be obvious. Very few people can post a bond that approaches seven figures." *Id.* Many bondsmen cannot even approve such amounts. *See Ex parte Miller*, 442 S.W.3d 478,

---

[1] In *Melartin*, the court listed the following examples of reversal of high bail amounts. 464 S.W.3d at 795. *Ludwig*, 812 S.W.2d at 325 ($2 million bail reduced to $50,000); *Ex parte Estrada*, 398 S.W.3d 723, 728 (Tex. App.—San Antonio 2008, no pet.) ($1 million bail reduced to $600,000); *Durst*, 148 S.W.3d at 501 ($3 billion bail reduced to $450,000); *Ex parte Beard*, 92 S.W.3d 566, 574 (Tex. App.—Austin 2002, pet. ref'd) ($8 million bail reduced to $500,000); *Ex parte Milburn*, 8 S.W.3d 422, 427 (Tex. App.—Amarillo 1999, no pet.) ($2 million bail reduced to $100,000); *Ex parte McDonald*, 852 S.W.2d 730, 736 (Tex. App.—San Antonio 1993, no pet.) ($1 million bail reduced to $75,000).

481 (Tex. App.—Dallas 2013, no pet.).

The citizen who has been accused, but not convicted, has a "strong interest in liberty." *United States v. Salerno*, 481 U.S. 739, 750 (1987). Bail should not be used to keep a person "off the streets," or worse, to coerce a plea. *Ex parte Benefield*, 403 S.W.3d 240, 241 (Tex. Crim. App. 2013) (Cochran, J., concurring). As we stated in *Melartin*:

> The time spent in jail awaiting trial is not insignificant. It often means the loss of a job, and the disruption of family life. *See Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It hinders the person's ability to gather evidence, contact witnesses, or otherwise prepare for a defense. *Id*. at 533, 92 S.Ct. 2182. And all the while, the person is "living under a cloud of anxiety, suspicion, and often hostility." *Id*.

464 S.W.3d at 796.

Bail is not to be increased as a means of "sanctioning" the accused. *See Pharris v. State*, 165 S.W.3d 681, 691 (Tex. Crim. App. 2005). In this case, appellant's bail was increased from an aggregate of $340,000 to $1,825,000, more than five times the original amount. Considering the high amount that was set, the bail in this case appears to have been used as an instrument of oppression.

## VI.    Other Factors

With regard to other factors, the record reflects that appellant was working as a delivery driver before being confined to house arrest. Appellant has lived with Yepez for a year and has a child who also lives in Harris County. The record further reflects appellant was able to post bonds totaling $340,000. Appellant's bail bondsman averred that appellant did not have the financial resources to post a $1.8 million bond.

In considering the propriety of bail in Harris County cases, this court has

considered the "Harris County Bail Schedule." *See Melartin*, 464 S.W.3d at 793. The bail schedule provides for "no bond" for offenses allegedly committed while an accused is on bail for a felony charge. Despite that provision the trial court set bail in this case.

The bail schedule also suggests that, for cases involving large quantities of controlled substance, the bail be set at double the value of the controlled substance. Although the State argued that appellant was found with 89 grams of methamphetamine, the State presented no evidence of this amount and no evidence of its alleged value. Therefore, this guideline also was not, and is not, a viable consideration in evaluating the propriety of bail in this case.

The category on the bail schedule closest to the facts and testimony in this case is for a first degree felony with a prior conviction, for which the bail schedule suggests a bail of $30,000. Here, however, appellant's indictments for first degree felonies contain enhancement paragraphs alleging two prior felony convictions, which appellant did not dispute at the writ hearing. If convicted, appellant faces possible confinement of twenty-five years to life in prison. These considerations are counter-balanced by appellant's ties to the community. Additionally, we consider the aggravating fact that appellant was arrested for the latest possession cases while on bond for prior felony offenses.

## CONCLUSION

Having considered all of the pertinent factors, we are not persuaded that good and sufficient cause has been shown for increasing appellant's bail to an aggregate amount of $1,825,000. Although appellant faces serious charges, the record demonstrates that he is not an unusual flight risk, and there is no evidence that the alleged victims or their families would be imperiled if appellant were re-released on bond. At most, the State established that a moderate increase in bail may be justified,

12

given the concern that appellant has been charged with further offenses despite complying with GPS monitoring. The trial court abused its discretion by increasing appellant's bail in excess of that consideration.

Accordingly, appellant's first issue on appeal is sustained, and the order of the trial court denying appellant's application for writ of habeas corpus is reversed. Appellant asks this court to set an aggregate bond of $250,000 because this is the amount he can afford. Although the State presented no evidence to dispute appellant's inability to afford a bond over $250,000, we are not persuaded in light of the evidence that appellant previously posted a $340,000 bond. Having weighed the preceding considerations, we are of the opinion that bail of a total of $1,825,000 in this case is excessive. We lower appellant's bail amounts for an aggregate of $630,000, as follows:

| Charge | Lowered Bail Amount |
| --- | --- |
| Unlawful possession of a firearm by a felon | $60,000 |
| Aggravated robbery | $150,000 |
| Possession of controlled substance with intent to deliver | $100,000 |
| Possession of controlled substance with intent to deliver | $100,000 |
| Tampering with evidence | $60,000 |
| Unlawful possession of a firearm by a felon | $60,000 |
| Possession of a controlled substance with intent to deliver | $100,000 |

The trial court's bond conditions remain unchanged and continue to be

effective until disposition of this case.

We further direct the clerk of this court to issue the mandate immediately. *See* Tex. R. App. P. 18.6; *Ex parte Bowles*, 166 Tex.Crim. 425, 427, 314 S.W.2d 598, 600 (1958) (reversing a judgment denying bail and issuing the mandate immediately).

PER CURIAM

Panel consists of Justices Christopher, Hassan, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).