**Affirmed as Reformed and Opinion filed April 2, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00926-CR

## EX PARTE RIKU MELARTIN

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1444950**

## O P I N I O N

The sole question in this case is whether the trial court abused its discretion by setting bail at the aggregate amount of $7.2 million. Based on the unique facts and circumstances of the case, we conclude that the trial court's assessment of bail is excessive. We reform the trial court's judgment and set bail at $900,000, per appellant's request.

### BACKGROUND

Appellant is currently awaiting trial on nine separate felony charges. In five of the charges, appellant was indicted for sexually assaulting a child under the age of seventeen. In the remaining charges, he was indicted for indecency with a child,

compelling prostitution, sexual performance by a child, and tampering with a witness. Each offense is alleged to have occurred in Harris County between August and December of 2012.

The trial court initially set bail at $30,000 on two of the charges and $50,000 on the rest, for a total of $410,000. By July of 2013, appellant had posted bail bonds in each of his cases.

Shortly after his release, appellant was cited for violating several conditions of his supervision. One condition required him to report to supervisors in two separate offices. Appellant reported to just one supervisor, apparently unaware of the other responsibility. After the condition was fully explained to him, appellant was never cited again for a failure to report.

Appellant was cited on other occasions for violating his curfew, which required him to be at home between the hours of 10:00 p.m. and 7:00 a.m. In connection with this condition, appellant was equipped with a GPS monitoring device. The device reported that, on July 5, 2013, appellant left his home early at 6:39 a.m. On October 2, 2013, he left home two minutes and fifteen seconds too soon, at 6:57:45 a.m. On November 11, 2013, he arrived home late at 10:05:17 p.m. And finally, on December 3, 2013, he arrived home ten seconds late, at 10:00:10 p.m. On all but the first occasion, the trial court admonished appellant about following the conditions of his pretrial release.

Appellant received additional citations for failing to pay certain fees and failing to charge his GPS device as directed. Frequently, the device was not holding a full charge, and there were periods in which it was unable to account for appellant's location. The durations in which the device was inactive ranged from a few minutes to a few hours.

2

On January 21, 2014, after a series of alleged charging violations, the trial court revoked appellant's bail and ordered him to be held without bond. No advance notice was ever given, and no hearing was ever held.

Appellant filed an application for writ of habeas corpus on January 23, 2014, which the trial court denied that same day. Four days later, the court reconsidered its decision and reinstated appellant's bail. The court also permitted appellant to obtain a new GPS device from a different vendor, following appellant's complaints that his original device was defective.

Appellant complied with the conditions of his supervision for nearly five more months, until June 17, 2014, when he was arrested in Galveston County for driving while intoxicated. There, he was also indicted for offering a bribe to his arresting officer.

Appellant returned to Harris County on June 20, 2014, where he reported to his bond officer that he had been arrested in Galveston County. Appellant did not advise the trial court of his arrest, even though he had appeared in court earlier that day. On June 23, 2014, the State moved to deny bail in the Harris County cases because appellant had been charged with a felony while out on bond for a different felony. The trial court summarily granted the motion that same day, without ever conducting a hearing.

Appellant filed another application for writ of habeas corpus, complaining again that the trial court had unreasonably held him without bail. A hearing was held, and the State presented its evidence first. A supervision officer opined that appellant could not behave himself, based on his recent charges in Galveston County. The officer testified about appellant's previous bail violations, but she acknowledged that these violations had not been major. The officer explained that some curfew violations could have been attributed to the defective GPS device.

3

The officer also recognized that appellant was subject to many conditions with which he had "absolutely" complied.

Appellant did not testify at the writ hearing, but he called three supporting witnesses. The first witness was the operator of an alcoholic treatment center, who testified that he was ready and able to immediately accept appellant into his facility should the trial court authorize appellant's release. The second witness was appellant's bail bondsman, who testified that appellant had a good reputation for following the rules and making timely and regular reports. The last witness was appellant's close friend and civil attorney, who said that he was prepared to deposit $25,000 in cash to the registry of the court if that were required to ensure appellant's release on bond.

Appellant requested that the trial court reinstate his bail or set bail at a reasonable amount. The State argued that appellant had flagrantly disregarded the court's orders and that bail should be increased to $1 million in each case. The trial court granted the application for writ of habeas corpus, but in its order, the court set bail in each of the nine cases from Harris County at $800,000, for an aggregate amount of $7.2 million.

## ANALYSIS

### I.     Standard of Review

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of

4

reasonable disagreement. *See Ex parte Castillo-Lorente*, 420 S.W.3d 884, 887 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Under Texas law, once a defendant has been given bail, "he shall not be required to give another bond in the course of the same criminal action." *See* Tex. Code Crim. Proc. art. 17.09, § 2. There is one exception to this rule. Upon a showing of "good and sufficient cause," the trial court may increase the defendant's bail and require him to give another bond. *Id.* art. 17.09, § 3.

We consider whether good and sufficient cause was shown in conjunction with several rules and factors that generally govern the reasonableness of bail. First, Article 17.15 of the Code of Criminal Procedure imposes the following rules:

1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2.  The power to require bail is not to be so used as to make it an instrument of oppression.

3.  The nature of the offense and the circumstances under which it was committed are to be considered.

4.  The ability to make bail is to be regarded, and proof may be taken upon this point.

5.  The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. art. 17.15.

In addition to these rules, case law provides that courts may consider the following set of factors: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; (7) the aggravating circumstances alleged to have been involved in the charged offense;

5

and (8) whether the defendant is a citizen of the United States. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 n.2 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Castellanos*, 420 S.W.3d 878, 882 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## II. Nature and Circumstances of the Alleged Offenses

When assessing the reasonableness of bail, the Court of Criminal Appeals has instructed that the "primary factors" are the punishments that can be imposed and the nature of the offenses. *See Rubac*, 611 S.W.2d at 849. In this case, appellant has been accused of committing nine felonies of varying degrees. There is one first-degree felony charge for compelling prostitution. *See* Tex. Penal Code § 43.05(b). There are seven second-degree felony charges: five are for sexual assault of a child, *id.* § 22.011(f); one is for indecency with a child, *id.* § 21.11(d); and one is for tampering with a witness, *id.* § 36.05(d). Finally, there is one third-degree felony charge for sexual performance by a child. *Id.* § 43.25(e).

If convicted, appellant would face lengthy prison sentences. First-degree felonies are punishable between five and ninety-nine years' or life imprisonment. *Id.* § 12.32. Second-degree felonies are punishable between two and twenty years' imprisonment. *Id.* § 12.33. Third-degree felonies are punishable between two and ten years' imprisonment. *Id.* § 12.34. And for each offense, the trial court could assess a fine of up to $10,000. The court could also cumulate, or "stack," the sentences for sexual assault and indecency with a child, which would greatly extend appellant's incarceration. *Id.* § 3.03(b)(2).

Appellant incorrectly asserts that he would be eligible for community supervision in all nine of his cases. Under the law that was applicable at the time of the alleged offenses, a jury could not recommend community supervision if appellant was convicted of sexual performance by a child. *See* Tex. Code Crim.

Proc. art. 42.12, § 4(d)(7) (West 2012). Likewise, if appellant elected for the court to assess punishment, the judge could not grant community supervision in any of the charged offenses, except for tampering with a witness. *Id.* § 3g(a)(1)(C), (H), (J), (L).

The criminal allegations against appellant are just as serious as the penal consequences of conviction. The charging instruments allege that appellant sexually abused two teenage girls. As to one of the girls, there are no specific allegations regarding the circumstances of her abuse beyond the bare language of the indictments. However, as to the other girl, the case files contain a supporting affidavit, which was attached to the complaint, reflecting that the abuse happened near closing time at appellant's place of business. The girl was in the office waiting on her mother, who had a cleaning contract with the business. Appellant allegedly fondled the girl's breasts, masturbated in front of her, and had sexual intercourse with her. He also allegedly paid the girl $500, and he offered to confer a benefit to the girl's family in exchange for withholding testimony.

Appellant is entitled to a presumption of innocence on all of these charges. When setting bail, the trial court must strike a balance between this presumption and the State's interest in assuring that appellant will appear for trial. Because the charges and their consequences in the event of conviction are so serious, the trial court could have reasonably determined that bail should be set at a high amount.

However, the trial court's original assessment of bail was already quite high. The guidelines in Harris County recommend a bail of $30,000 for "any 3g offense." *See* Bail Bond Schedule, https://www.justex.net/BailBondSchedule.aspx (referring to offenses enumerated under Article 42.12, Section 3g of the Texas Code of Criminal Procedure). The only higher amounts on the guidelines are listed for situations that do not apply here, such as when the defendant is charged with

7

murder, is undocumented, or has a history of deportation. *Id.* Appellant's original bail amounts exceeded these guidelines, though not by much.

Neither side presented any new evidence during the writ hearing regarding the nature and circumstances of the charged offenses. When viewed alone, this factor would not support the trial court's decision to increase bail to $800,000 in each case.

## III.     Sufficient Bail to Assure Appearance

The next factor addresses whether the defendant is a flight risk. Here, the record suggests that appellant is not a citizen of this country. He has an immigration attorney who, in April of 2013, applied for the renewal of appellant's visa. There is no indication that appellant has naturalized since then.

The record of the writ hearing does not affirmatively show appellant's country of origin. On the day of oral argument, appellant supplemented the record with the transcript from an earlier bond hearing, and in that record, the evidence established that appellant is a citizen of Finland. The State contends that appellant may have citizenship in another country as well, possibly one that has no extradition treaty with the United States. However, no evidence was ever presented on this point.

The record shows that appellant has surrendered his passport, which greatly limits his ability to travel. The record also shows that appellant did not attempt to flee the jurisdiction when he was previously released on bond. When his GPS device was functioning properly, his location was monitored and he was never shown to venture outside the geographic limitations of the trial court's bail order.

A supervision officer testified that appellant attended every one of his pretrial appearances. Appellant's bail bondsman also testified that appellant

8

regularly reported to him, both in person and over the phone. This uncontroverted evidence would not support a finding that appellant presents an unusual flight risk. Accordingly, this factor would also weigh against an increase in bail. *See Ex parte King*, 613 S.W.2d 503, 504 (Tex. Crim. App. 1981) (holding that a continuance does not warrant an increase in bail, especially where the record also shows that the defendant has been present at every pretrial appearance); *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (rejecting the suggestion that the defendant was a flight risk after noting that the defendant did not flee the jurisdiction despite having the opportunity to do so); *see also Ex parte Durst*, 148 S.W.3d 496, 498 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (concluding that bail may be set at a high amount—just $450,000 in that case—where the defendant jumped bail, disguised himself, fled the jurisdiction, and mentioned that he had great sums of money secreted in a non-extradition country).

## IV.    Future Safety of the Victims and the Community

As a condition of bail, the trial court entered an order prohibiting appellant from contacting the two girls whom he allegedly abused, including their families. To further protect the community, the court also ordered that appellant abide by a curfew, participate in electronic monitoring, and abstain from alcohol.

There is no evidence that appellant has ever attempted to contact the two girls or their families while he was out on bond. Thus, an increase in bail cannot be justified by a perceived danger to the victims or their families.

The State did produce evidence of other violations. The State showed, for instance, that appellant broke his curfew on at least four occasions. However, the State's own witness testified that these violations were not major. Indeed, under this court's own precedent, those violations could not justify an increase in bail. *See Meador v. State*, 780 S.W.2d 836, 836–37 (Tex. App.—Houston [14th Dist.]

9

1989, no pet.) (reversing an increase in bail after concluding that the defendant's three- or five-minute tardiness did not constitute good and sufficient cause).

The State's witness also observed that the alleged curfew violations may have been attributed to a defective GPS device. Even if the curfew violations had been accurately reported, there is no evidence that appellant posed a threat to the community during the times of the violations. Similarly, there is no evidence that appellant broke his curfew or failed to adhere to the rules of electronic monitoring since he received a new GPS device.

The State emphasizes that appellant received a misdemeanor charge for driving while intoxicated. Without question, drunk driving does endanger the community at large, and the State has a valid interest in preventing such dangers. We must be mindful, however, that appellant has not yet been convicted of that offense, and it is possible that the trial court in Galveston County has already calculated such risks in its assessment of bail. Furthermore, the record reflects that bail is often set at just $500 for a first-time DWI offender. There is no evidence that appellant has a history of drunk driving convictions, or any convictions for that matter.

Appellant elicited testimony that an alcoholic treatment center was available to him should he be released on bond. Appellant would have been admitted to the center as an in-patient, and his treatment would have lasted between thirty and ninety days. The center does not lock its doors, but appellant's attendance could have been assured through GPS monitoring, a condition that appellant is capable of complying with. Altogether, the evidence supports a finding that a moderate increase in bail, at most, would be sufficient to protect the interests of the community.

## V.    Instrument of Oppression

The State has cited to only a single case where bail in excess of one million dollars has been affirmed on appeal. *See Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). But that case is easily distinguishable on its facts. There, the defendant was arrested with a substantial amount of cocaine in his possession, having a street value of more than $72 million. *Id.* at 94. Testimony from the defendant's friends and families also demonstrated that the defendant had very little ties to Texas and that he may in fact flee the jurisdiction if released on bond. *Id.* Our record, by contrast, has no evidence of aggravating circumstances or a suggestion that appellant is a flight risk.

Far more numerous are the cases in which appellate courts have disapproved of high bail amounts. *E.g.*, *Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991) (per curiam) ($2 million bail reduced to $50,000); *Ex parte Estrada*, 398 S.W.3d 723, 728 (Tex. App.—San Antonio 2008, no pet.) ($1 million bail reduced to $600,000); *Durst*, 148 S.W.3d at 501 ($3 billion bail reduced to $450,000); *Beard*, 92 S.W.3d at 574 ($8 million bail reduced to $500,000); *Ex parte Milburn*, 8 S.W.3d 422, 427 (Tex. App.—Amarillo 1999, no pet.) ($2 million bail reduced to $100,000); *Ex parte McDonald*, 852 S.W.2d 730, 736 (Tex. App.—San Antonio 1993, no pet.) ($1 million bail reduced to $75,000). The reason for the dichotomy should be obvious. Very few people can post a bond that approaches seven figures. Many bondsmen cannot even approve such amounts. *See Ex parte Miller*, 442 S.W.3d 478, 481 (Tex. App.—Dallas 2013, no pet.).

When bail is set so high that a person cannot realistically pay it—and an aggregate amount of $7.2 million would certainly qualify under that standard—the trial court essentially "displaces the presumption of innocence and replaces it with

11

a guaranteed trial appearance." *See Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.). That is clearly not the function of bail. *See* Tex. Code Crim. Proc. art. 17.15(1) (providing that bail should be high enough to give just "reasonable assurance" that the defendant will appear at trial); *see also Ex parte Benefield*, 403 S.W.3d 240, 241 (Tex. Crim. App. 2013) (Cochran, J., concurring) (noting that bail should not be used to keep a person "off the streets," or worse, to coerce a plea).

The time spent in jail awaiting trial is not insignificant. It often means the loss of a job, and the disruption of family life. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972). It hinders the person's ability to gather evidence, contact witnesses, or otherwise prepare for a defense. *Id.* at 533. And all the while, the person is "living under a cloud of anxiety, suspicion, and often hostility." *Id.*

At the end of the writ hearing, the State argued that appellant "made a fool out of this Court and you," speaking to the trial judge, "and he spit in your face and gave you the finger." The State's argument was pure hyperbole. No fair reading of the record can support a literal understanding of such claims. Yet the trial judge appeared to embrace the State's implicit suggestion that appellant should be punished for his behavior. The judge explained that she was increasing bail because appellant "has shown no respect for this Court." This reasoning runs afoul of the rule that bail is not to be increased as a means of "sanctioning" the accused. *See Pharris v. State*, 165 S.W.3d 681, 691 (Tex. Crim. App. 2005).

The trial court's increase was dramatic—more than 1600%. Considering the high amount that was set, coupled with the undertones of punitive action, the bail in this case appears to have been used as an instrument of oppression.

## VI.  Other Factors

Our limited record does not reveal much by way of the other factors. We know that appellant was able to post bonds totaling $410,000. If bail were increased, appellant's bail bondsman testified that he would waive a portion of his fee and give appellant credit for the bonds that have already been written. However, neither side presented evidence that appellant possessed the financial resources for posting additional bonds totaling $7.2 million (or $9 million, which the State had actually requested).

The record shows that appellant worked at a car dealership. He has a wife and children. It is unclear for how long appellant has lived in the United States, but appellant's civil attorney testified that they have been friends "for about ten years."

We are not aware of any authority for factoring the presence of exculpatory evidence, but we do note that the State's *Brady* disclosures have revealed that appellant is excluded as a DNA contributor in at least one of the alleged assault cases. Altogether, these other factors would caution against a significant increase in bail.

## VII.  Abuse of Discretion

Having considered all of the pertinent factors, we are not persuaded that good and sufficient cause has been shown for increasing appellant's bail to an aggregate amount of $7.2 million. Even though appellant faces serious charges, the record demonstrates that he is not an unusual flight risk, and there is no evidence that the alleged victims or their families would be imperiled if appellant were re-released on bond. At most, the State established that a moderate increase in bail may be justified, given the concern that appellant's drunk driving incident

13

suggested a possible risk to the community. The trial court abused its discretion by increasing appellant's bail in excess of that consideration.

## CONCLUSION

Appellant requests that we reinstate his original bail, or in the alternative, set bail in each of his nine cases at $100,000. Appellant explained during oral argument that bail is sometimes doubled when a defendant is charged with a new offense while out on bond.

We grant the alternative relief and reform the trial court's judgment to reflect that bail is set at $100,000 in each of appellant's nine cases, for an aggregate amount of $900,000. Appellant's conditions of release, as stated in the trial court's pretrial supervision order, remain unchanged and continue to be effective until disposition of the case. We affirm the trial court's judgment as reformed.

We further direct the clerk of this court to issue the mandate immediately. *See* Tex. R. App. P. 18.6; *Ex parte Bowles*, 166 Tex. Crim. 425, 427, 314 S.W.2d 598, 600 (1958) (reversing a judgment denying bail and issuing the mandate immediately).

/s/ Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Publish — Tex. R. App. P. 47.2(b).

14