**Opinion filed December 16, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-21-00131-CR

_____

## EX PARTE GREG ANTHONY BARRERA III

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV57686**

### M E M O R A N D U M   O P I N I O N

Greg Anthony Barrera III filed a pre-indictment application for writ of habeas corpus in which he sought a reduction in the amount of his bail. At the time that Barrera filed the application, he had been arrested and charged with murder, and his bail had been set at $1,000,000. The trial court held a hearing on Barrera's application and denied his request to reduce the amount of bail. The trial court ordered that bail remain at $1,000,000. Barrera appeals. We affirm.

*Standards Related to Amount of Bail*

On appeal, Barrera complains in a single issue that the trial court abused its discretion when it denied his request to reduce the amount in which bail had been set in this case. We review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *see also* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015)[1] (giving trial court discretion to set amount of bail). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Article 17.15 of the Code of Criminal Procedure implements the constitutional right to bail and provides that the amount of bail:

> [I]s to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.

---

[1]We note that the legislature recently amended Article 17.15 but that the amended version does not apply to this case, as it did not take effect until December 2, 2021. The 2021 legislation (the Damon Allen Act) provided that the changes to the article apply only to a person who is arrested on or after the effective date of the Act. *See* Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 11, §§ 1, 10, 24, 25 (S.B. 6). In this opinion, when we refer to the provisions of Article 17.15, we are referring to the article as it existed at the time of Barrera's arrest.

> 5. The future safety of a victim of the alleged offense and the community shall be considered.

CRIM. PROC. art. 17.15. The ability to make bond is one of many factors to be considered; however, it does not control the amount of bail and will not automatically render an amount excessive. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Branch*, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977). If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in the position to determine what his bail should be. *See Branch*, 553 S.W.2d at 382.

In addition to the rules listed in Article 17.15, the following factors may also be considered: possible punishment, the accused's work record, his family and community ties, the length of his residency in the community, his citizenship, his prior criminal record, his conformity with the conditions of any prior bail bond, and the existence of any outstanding bail bonds. *Melartin*, 464 S.W.3d at 792; *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.); *see Charlesworth*, 600 S.W.2d at 317; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *see also Rubac*, 611 S.W.2d at 849. The primary purpose of a bail bond is to secure the accused's presence in court. *Vasquez*, 558 S.W.2d at 479. The accused has the burden to prove that bail is excessive. *Id.*

*Evidence Presented at Habeas Hearing*

The record from the hearing on Barrera's habeas corpus application shows that he was seventeen years old at the time of the hearing. He had a driver's permit, but did not yet have a driver's license. Prior to his arrest, Barrera had a summer job as a landscaper. There is no evidence in the record as to whether Barrera had any criminal history or a juvenile record. The record shows, however, that one of the reasons that Barrera's bond was set so high was that he was not arrested immediately

3

after the warrant was issued. Approximately two weeks after the arrest warrant was issued, Barrera, with the help of his attorney, surrendered to law enforcement in a nearby town.

Although Barrera did not testify at the hearing, his aunt and his mother did. These witnesses testified that Barrera's family had strong ties to Midland and that they would ensure that Barrera met all of the conditions of his bond. Barrera's mother and aunt did not specifically testify about the family's financial resources, or a particular lack thereof, or about any efforts they had made to attempt to secure bail for Barrera. However, Barrera's mother did testify that the family was unable to raise the necessary funds to make bail in the amount of $1,000,000. According to Barrera's aunt and mother, the family could raise enough money to pay a bondsman if bail were reduced to $100,000. The testimony at the habeas hearing thus established that it would be Barrera's family, and not Barrera himself, who would put up the money for any bond he received.

In addition to evidence related to Barrera's ability to make bail and his family's ties to the community, evidence about the nature of the crime was also introduced at the hearing. The affidavit in support of the warrant for Barrera's arrest was admitted as an exhibit. The affidavit indicated that on the night of May 29, 2021, police were dispatched to "Kessler's," where nineteen-year-old Samuel Anaya III had been shot multiple times. Anaya was pronounced dead shortly thereafter. Witnesses indicated that Barrera, who had performed at the event taking place at Kessler's that night, had a "beef" with Anaya. Eyewitnesses identified Barrera as the driver of the dark-colored Nissan pickup that drove east down the alley behind the venue—where Anaya was shot while on foot. One of the eyewitnesses "saw shots fired from the drivers side portion" of the Nissan pickup. Barrera had three male passengers with him in the pickup. The detective who requested the arrest

4

warrant viewed a surveillance video that was provided to him by one of the eyewitnesses. According to the detective, that video corroborated the eyewitnesses' statements.

*Analysis*

The nature of the offense as alleged by the State indicates a brazen act committed in a public place. As part of a review of the nature of the offense, courts must necessarily consider the potential punishment permitted under the law. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980). In this case, the potential punishment for murder would be imprisonment for life or for any term of not more than ninety-nine years or less than five years, plus an optional fine of up to $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2019).

Here, not only was the alleged offense brazen and the potential punishment lengthy, but there was some evidence to indicate that, despite the family's ties to the community, Barrera had already shown to be a flight risk. Barrera apparently absconded from authorities for approximately two weeks between the issuance of the arrest warrant and his eventual surrender, which indicated that he may be a flight risk. Additionally, because it would be his family's assets that were at risk rather than his own, Barrera would likely have less incentive to appear at trial. *See Ex parte Cardenas*, 557 S.W.3d 722, 731 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.).

Appellate courts in cases such as this often compare bail amounts in other cases involving offenses of the same degree. We note that in numerous cases involving a murder charge, appellate courts in Texas have upheld bail in an amount similar to that imposed in this case. *See, e.g.*, *Ex parte Garner*, No. 10-18-00129-CR, 2018 WL 3469834, at *1 (Tex. App.—Waco July 18, 2018, no pet.) (mem. op., not designated for publication) ($1,000,000); *Ex parte Green*, No. 02-13-00474-CR,

2014 WL 584960, at *1 (Tex. App.—Fort Worth Feb. 13, 2014, no pet.) (mem. op., not designated for publication) ($1,000,000); *Ex parte Garcia*, No. 09-06-00543-CR, 2007 WL 846571, at *1 (Tex. App.—Beaumont Mar. 21, 2007, no pet.) (mem. op., not designated for publication) ($950,000).

When assessing the reasonableness of bail, the Court of Criminal Appeals has instructed that the "primary factors" are the length of the sentence that can be imposed and the nature of the offense. *Rubac*, 611 S.W.2d at 849. Given the serious nature of murder, the circumstances surrounding the crime as alleged in this case, Barrera's potential sentence, the evidence that was presented at the hearing, and the lack of evidence showing the family's efforts to obtain a bond and the family's financial resources, we cannot hold, on the record before us, that the trial court abused its discretion when it concluded that Barrera had failed to meet his burden to show that bail in the amount of $1,000,000 was excessive. We overrule Barrera's sole issue on appeal.

### This Court's Ruling

The order of the trial court is affirmed.

W. BRUCE WILLIAMS
JUSTICE

December 16, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.