**Affirmed and Memorandum Opinion filed January 24, 2023.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-22-00316-CR**
**NO. 14-22-00317-CR**

---

## EX PARTE TIFFANY PETEET

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1761896, 1763901**

## MEMORANDUM OPINION

Appellant, Tiffany Peteet, brings this appeal from the trial court's order on her application for writ of habeas corpus. Appellant was charged with a first-degree felony offense of murder and a third-degree felony offense of tampering with physical evidence. *See* Tex. Penal Code Ann. §§ 19.02(b)(1)-(2); 37.09(a)(1).

A Harris County Magistrate set bail in the amount of $250,000 for the murder charge and $100,000 for the tampering charge. At the request of defense

counsel, the trial court reduced the amounts to $200,000 for the murder charge and $75,000 for the tampering charge.

Appellant filed a pretrial application for a writ of habeas corpus in both cases, alleging the bail amounts are excessive and thus render her unlawfully restrained. After a hearing on appellant's application, the trial court denied appellant's request to further reduce her bail amounts. This appeal followed.

## Background

On September 1, 2021, police arrested appellant for the offenses of murder and tampering with physical evidence. At that time, appellant was out on bond for four pending charges consisting of one misdemeanor and three felonies. There was also an additional felony charge pending at the time. Appellant's stepfather posted the bond for four of the charges. A timeline of appellant's criminal history is as follows:

- January 20, 2012: federal conviction for the felony offense of conspiracy to make, possess, and utter forged securities; sentenced to 60 months in prison followed by 3 years of supervised release.

- September 24, 2019: arrested for the misdemeanor offense of theft of services. Appellant was alleged to have received Botox treatments in the amount of $2,000 for which she did not pay. Appellant's stepfather posted appellant's bond.

- January 29, 2020: arrested for felony criminal mischief. Appellant was alleged to have caused $3,000 worth of damages to her neighbor's vehicle after an altercation. Appellant's stepfather posted appellant's bond.

- May 24, 2020: arrested for the felony offense of theft of a firearm.

2

Appellant was alleged to have stolen a firearm from her previous attorney, William Underwood. Appellant's stepfather posted appellant's bond.

- June 26, 2020: arrested for felony offense of theft. Appellant was alleged to have refused to return a rental vehicle. Appellant's stepfather posted appellant's bond.

- April 12, 2021: arrested for felony offense of theft. Appellant was alleged to have refused to return a rental vehicle.

### The underlying charges

Appellant is alleged to have murdered Donna Abshire, the longtime girlfriend of appellant's previous attorney, William Underwood. The probable cause affidavit, admitted as an exhibit at the habeas hearing, explains that police officers found an iPad in Abshire's home which contained recordings of conversations between Abshire and appellant from June 19, 2020 to July 9, 2020. The iPad recordings reveal appellant's scheme to acquire access to Abshire's bank accounts, credit cards, vehicle, and cell phone. Appellant allegedly told Abshire that Abshire's boyfriend, William Underwood, was being investigated by the "DEA" and "Feds." Appellant said she was assisting in the investigation, but was trying to keep Underwood out of trouble. Appellant told Abshire that she needed access to Abshire's accounts for the investigation, but Abshire would be reimbursed upon its completion.

The probable cause affidavit further revealed that on July 9, 2020, Abshire sent several text messages to appellant demanding that appellant return Abshire's credit cards, vehicle, cell phone; restore Abshire's bank account log-in information; and reimburse Abshire's money. In these text messages, Abshire

stated that she believed appellant had scammed her to get back at Underwood for the firearm theft charge.

Around 11 am on July 10, 2020, police discovered Abshire dead in her home from a gunshot wound. The probable cause affidavit reflects that there is an iPad recording, a home security system log, and video footage from a neighbor's doorbell camera evidencing that appellant and Abshire were alone together inside Abshire's home on July 9, 2020 for several hours prior to leaving together at 11:51 pm. Appellant corroborated this information on July 10, 2020 when she called Abshire's cell phone at 9 pm. Police answered the phone and questioned appellant about Abshire's death. Appellant stated that she and Abshire had been drinking together on July 9, then they went out driving, and eventually returned to Abshire's home.

The log of Abshire's home security system reflects that the home was entered at 4:18 am on July 10, 2020. The alarm was successfully deactivated and set to "stay" mode. Minutes later, at 4:24 am, the alarm was activated by the front door opening and closing multiple times. The log reflects several unsuccessful attempts to deactivate the alarm. The home security system's operator called the phone number on file, which was registered to Abshire. It is alleged that appellant answered the phone identifying herself as Donna Abshire, but was unable to provide the security code. Appellant then allegedly told the operator that she was Abshire's daughter. The operator informed appellant that the police would be called to the residence. At 4:50 am, police visited the home and saw no evidence of a forced entrance or other suspicious activity.

Minutes after the phone call with the security system operator, the home security system account was accessed via a cell phone. The cell phone user removed the doorbell camera and rear patio camera from the account. All videos

4

captured from the cameras were deleted. The deletion of these videos is the basis for the tampering charge against appellant underlying this appeal.

During the July 10 phone call with police, appellant said she returned to Abshire's home again around 8:55 am on that morning, but said she did not see Abshire. The home security system was set off again at this time. Police returned, but found nothing amiss from the outside. Police contacted Abshire's daughter and requested she bring a key to the home for a welfare check. Police found Abshire dead in the front room of her home.

William Underwood informed police that appellant had stolen two firearms from his home in March and that police should consider her as a potential suspect in Abshire's murder. During the investigation, police discovered appellant's fingerprints at the crime scene. Additionally, police found a vehicle registered to appellant's ex-husband in Abshire's garage. The vehicle contained miscellaneous paperwork bearing appellant's name. Given the above chain of events and evidence found at the crime scene, police concluded appellant was financially motivated to kill Abshire and did so on the morning of July 10, 2020. Police arrested appellant on September 1, 2021.

### *Habeas Hearing*

Appellant called her stepfather, Michael Price, as her sole witness at the hearing. Price testified that he raised appellant like his own daughter since she was an infant. Appellant has been living with Price and her mother on and off since she was released from federal prison—for the last seven or eight years. Appellant has two children, one ten-year-old son and an infant daughter who was born while appellant was incarcerated for the underlying charges. Price and his wife have been caring for the children while appellant is in jail. Price explained that he posted bond on four of appellant's previous charges so that appellant could be at home

5

with her son. Price, however, eventually surrendered the bonds because of conflict between appellant and the rest of the family. An email written by Price to the bonding company was entered into evidence. In the email, Price writes he wanted to surrender bond for the following reasons, "[m]e and her mother have been threatened with bodily harm, if not by her, by her friends. She is very destructive to our home and disrespectful to everyone. We also believe she is on some type of drug by the way she acts. The police have been called on multiple occasions." He went on to explain that he believes appellant is a "flight risk." The bonds were surrendered, and appellant was taken into custody. According to Price, appellant was released the following day on a personal recognizance bond.

Price stated that he and his wife cannot afford to post bond at the current amounts. However, Price has negotiated with a bonding company to put his new home up for collateral on a $100,000 bond. Price assured the court that appellant would live with the family upon release and that they would "definitely make sure" she attended all required hearings. Price testified he believes it is important for appellant to be at home to spend time with her children—especially her infant daughter who she hasn't seen since the infant was three days old.

When asked about appellant's work history, Price was aware of appellant having only one job for a few months before she was arrested on the current offenses. According to Price, appellant worked full-time at a Holiday Inn shortly before police arrested her.

After both sides presented closing arguments, the court declined to reduce appellant's bond amounts. The trial court commented on appellant's continued pattern of committing crimes while on bond. Additionally, the trial court noted Price's hesitation when he testified he thought it was important for appellant to be home with her children.

ANALYSIS

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Castillo–Lorente*, 420 S.W.3d 884, 887 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1. The bail shall be sufficiently high to give reasonable assurance of compliance with the undertaking.

2. The power to require bail is not to be so used as an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered, including whether the offense involves violence.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

6. The criminal history record information for the defendant, including acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

Tex. Code Crim. Proc. art. 17.15.[1]

In addition to these rules, case law provides that courts may consider the

---

[1] The 2021 amendments to article 17.15(a) do not apply to this appeal.

following set of factors: (l) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; (7) the aggravating circumstances alleged to have been involved in the charged offense; and (8) whether the defendant is a citizen of the United States. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Rodriguez*, 595 S.W.2d 549, 550 n. 2 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### 1. Sufficiently high to assure appearance but not oppress

Bail needs to be in an amount sufficient to give reasonable assurance that the defendant will appear. When bail is set so high that a person cannot realistically pay it, however, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Bail may not be used as an instrument of oppression. *See Ex parte Guerra*, 383 S.W.3d 229, 233–34 (Tex. App.—San Antonio 2021, no pet.). Bail set in a particular amount becomes oppressive when it assumes that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (where bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression").

Appellant is alleged to have committed at least 4 crimes while out on multiple bonds posted by her stepfather. Appellant has demonstrated a lack of concern for her stepfather's financial risk in posting her bonds. A trial court could have reasonably concluded that the bond would need to be high in order to assure

compliance. *See Bartolo*, 2022 WL 17254957, at \*4 ("Appellant's non-compliance with previously imposed bond conditions weighs against a determination that the bail amount set by the trial court was excessive."); *Ex parte Owens*, Nos. 05-96-01540-CR, 05-96-01541-CR, 1997 WL 145170, at \*4 (Tex. App.—Dallas Apr. 1, 1997, no pet.) (not designated for publication) ("In light of the evidence that [defendant] did not comply with the conditions of his bonds and was charged with a new felony offense while out on bond, we cannot conclude that the [bail amounts set by the trial court were] excessive.").

Here, there is no evidence that the trial court set appellant's bail amount at $275,000 in order to keep appellant incarcerated. *See Bartolo*, 2022 WL 17254957, at \*8 (noting there was no evidence that the trial court set appellant's bail amount at $500,000 for murder to keep appellant incarcerated).

### 2. Nature and circumstances of alleged offense

A defendant is entitled to a presumption of innocence on all charges. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.) When assessing the reasonableness of bail, the Court of Criminal Appeals has instructed that the "primary factors" are the punishments that can be imposed and the nature of the offenses. *See Rubac*, 611 S.W.2d at 849. When the offenses charged are serious and involved potentially lengthy sentences, a defendant may have a strong incentive to flee the jurisdiction; thus, bail must be set in an amount sufficient to secure the defendant's presence at trial. *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 888 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A trial court must balance the presumption of innocence with the State's interest in assuring the defendant's appearance for trial. *Ex parte Robles*, 612 S.W.3d 142, 147 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Appellant is charged with murder, an offense violent and serious in nature.

9

*See* Tex. Code Crim. Proc. art. 17.03(b-3)(2)(A); *Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *4 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, no pet. h.) (mem. op., not designated for publication) (affirming a $500,000 bond for the "serious and violent" offense of murder); *Ex parte Chavfull*, 945 S.W.2d 183, 186–7 (Tex. App.—San Antonio 1997, no pet.) (holding a $750,000 bail was not excessive for defendant charged with murdering individual with firearm). The murder charge, a first-degree felony, carries a punishment range of 5 to 99 years or life in prison. *See* Tex. Penal Code Ann. § 12.32(a).

Appellant is also charged with tampering with evidence arising out of the same incident. The tampering charge, a third-degree felony, carries a punishment range of 2 to 10 years in prison.

However, because of appellant's criminal history, the punishments may be enhanced from 15 to 99 years or life in prison for the murder charge and 2 to 20 years in prison for the tampering charge. *See* Tex. Penal Code Ann. § 12.42(a),(c)(1). Additionally, because the murder and tampering charges are alleged to be a part of the same criminal episode, the State could try the charges together, thereby allowing the trial court to order that appellant's sentences run consecutively. *See* Tex. Penal Code Ann. §§ 3.02(a), 3.03(a).

These lengthy sentences potentially provide incentive to flee. Because the charges and their consequences in the event of conviction are grave, the trial court could have reasonably determined that the current bail amounts were reasonable. *See Ex parte Temple*, 595 S.W.3d 825, 829–30 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (affirming a $1,000,000 bond where defendant's murder charge and conviction provided a strong incentive to flee).

### 3. Ability to make bail

To demonstrate inability to make bail, a defendant generally must establish his and his family's funds have been exhausted. *Ex parte Dupuy*, 498 S.W.3d 220, 234–35 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The accused's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *Id.* "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Id.* (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)).

There was no evidence presented as to appellant's own ability to post bond. Her stepfather testified that he only knew her to have one job for a few months during the last 8 years. He explained that at one point she was living with a boyfriend whom he believed was providing for appellant. Given the lack of evidence of appellant's financial history and some evidence of financial support from outside parties, the trial court did not have sufficient evidence to conclude that appellant could not make bond. *See Bartolo*, 2022 WL 17254957 at *7 (affirming $500,000 bond for murder where there was scant evidence of appellant's own ability to make bond). Moreover, there was no evidence presented that appellant herself had unsuccessfully attempted to secure her own bond. *See Ex parte Tata*, 358 S.W.3d 392, 399 (Tex. App.—Houston [1st Dist.] 2011, pet. dsm'd) ("Unless she has shown that her funds and those of her family have been exhausted, a defendant must usually show that she made an unsuccessful effort to furnish bail before bail can be determined to be excessive.").

As for appellant's family, Price testified that he was ready and willing to put his new home up for collateral on a $100,000 bond. While this evidence supports

lowering the bond to an amount that could be afforded by appellant's family, this factor does not control over all other considerations. *See id.* (quoting *Milner v. State*, 263 S.W.3d 146, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

### 4. Future safety of the victims and the community

The trial court must also consider the future safety of the victim of the alleged offenses, and the community, in setting appellant's bail amounts. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). A defendant's criminal history must be evaluated to determine whether he presents a danger to the community. *Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 918 (Tex. App.—San Antonio 2022, no pet.). Appellant has repeatedly engaged in fraudulent behavior. Appellant has threatened bodily harm toward her own parents while out on bail for other offenses. There is also some evidence that appellant was attempting to seek revenge against William Underwood for reporting the theft of his firearms by engaging in a scheme to defraud Abshire. The trial court may consider the continuing alleged criminal conduct of the defendant while released on bail on prior occasions as constituting a continuing danger to the public. *Wilson v. State*, No. 01-13-00048-CR. 2013 WL 655263, at *6 (Tex. App.—Houston [1st Dist.] Feb. 21, 2013, no pet.) (mem. op., not designated for publication). The trial court could have reasonably concluded that appellant's bond amount was necessary to protect the community and the complainants. *See Ex parte Burton*, Nos. 14-22-00053-CR, 14-22-00054-CR, 14-22-00056-CR, 2022 WL 203936, at *3 (Tex. App.—Houston [14th Dist.] June 7, 2022, no pet.) (mem. op., not designated for publication) ("The trial court could also consider that appellant's capital murder charge is alleged to have occurred while he was released on bond for his unauthorized use of a motor vehicle charge, and he is further alleged to have committed burglary and aggravated assault while released on bond for the two

12

other charges, which implicates the safety of the complainants and the community."); *Ex parte Webb*, Nos. 10-12-00362-CR, 10-12-00363-CR, 2013 WL 1846880, at *2 (Tex. App.—Waco May 2, 2013, pet. struck) (mem. op., not designated for publication) (noting that appellant committed an offense in retaliation against previous victim while out on bail in assessing appellant's danger to the community).

### E. *Rubac* Factors

We now address the additional factors the court may consider in setting a bond amount. *See Rubac*, 611 S.W.2d at 850.

1. ***Appellant's work record.*** Price testified that over the last 8 years he has only known appellant to have had one job for a few months. This factor does not weigh in appellant's favor.

2. ***Appellant's family and community ties.*** Appellant's parents and two young children reside locally. However, Price's email reflects he believed her to be a flight risk. Specifically, Price stated in this email that appellant threatened that she was going to leave and would never see the family again. This factor does not weigh in appellant's favor.

3. ***Length of appellant's residency.*** Appellant has lived in the Houston area for the past 8 years. This factor weighs in appellant's favor.

4. ***Appellant's prior criminal record.*** Appellant has a significant criminal record, most charges of which have not yet been adjudicated. This factor does not weigh in appellant's favor.

5. ***Appellant's other bonds.*** Each time bond was posted for appellant, appellant was charged with another offense or offenses while on bond, indicating that appellant will not conform with the conditions of her

bond. Appellant allegedly committed the current offenses while out on bond for 4 other offenses, and while another charge was pending. This factor does not weigh in appellant's favor.

6. ***Aggravating circumstances in the charged offense.*** Appellant is charged with murder, a violent crime. The circumstances of the offense appear financially motivated, which is an established course of conduct for appellant's other alleged offenses and consistent with her federal fraud conviction. Additionally, appellant's sentences may be enhanced by her other alleged offenses and the trial court may order them to run consecutively because the charged offenses are alleged to be a part of the same criminal episode. This factor does not weigh in appellant's favor.

## CONCLUSION

Having considered all of the pertinent factors, we conclude appellant has not shown the trial court abused its discretion in denying appellant's application for writ of habeas.

PER CURIAM

Panel consists of Justices Wise, Jewell, and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b)