**Affirmed and Memorandum Opinion and Memorandum Concurring Opinion filed March 28, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00567-CR

---

## EX PARTE CAMREN KEITH JOHNSON, Appellant

---

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 97271-CR**

---

## MEMORANDUM OPINION

Appellant, Camren Keith Johnson, challenges the trial court's order denying his application for writ of habeas corpus seeking a reduction of bail in a charge against him for murder. Holding that the trial court did not abuse its discretion, we affirm.

### Background

Appellant is alleged to have intentionally or knowingly caused the death of Nathaniel Alaniz while intentionally or knowingly committing robbery. At the habeas hearing, the trial court heard from both the State and the Defense. Appellant

claims that another defendant is alleged to have committed these offenses, and he is not the alleged "shooter".

The trial court held a hearing on appellant's pretrial application for writ of habeas corpus to reduce his $3,000,000 bond. Appellant presented one witness at the habeas hearing, and the trial court denied appellant's request to reduce his bond.

**Alleged Offense**

On July 31, 2022, Nathaniel Alaniz died from multiple gunshots outside his home in Pearland, Texas. Two individuals witness an unknown heavy-set while male with curly brown hair talking with Alaniz. The witnesses were told to go inside and lock the doors by Alaniz. Once inside, the witnesses heard shots being fired and called 911. The witnesses performed CPR on Alaniz and observed the unknown heavy-set white male leave in a silver Ford Mustang. Appellant is not alleged to be the heavy-set white male.

While investigating the shooting of Nathaniel Alaniz, officers were advised that two males, wearing ski masks, latex gloves, and hoodies were parked at a nearby nature trail. It is alleged that the males were moving bags from a silver Ford Mustang into a black car. Officers found the silver Ford Mustang and learned that it was registered to a Jennifer Schmidt. Officers learned that the owner had a son named Evan Redmond, who was recently stopped for traffic violations in that vehicle. Officers Obtained call logs from Alaniz that show he was in contact with Redmond just before the shooting.

Later that evening, Redmond reported that his Mustang was stolen. Officers learned that Redmond was with a male named "Camren" next to a black Nissan Altima. Officers arrived at the location and identified Camren Keith Johnson as the

2

driver of the Altima. Surveillance footage of Alaniz's neighborhood shows this Altima coming into the neighborhood at least four times after Alaniz was killed. Investigators received a report of a person who had been shot and dumped near Alaniz's Neighborhood. The Houston Police Department was investigating this shooting and learned that a black Nissan Altima had been involved. The Houston Police Department obtained a license plate for the vehicle and learned that the Altima was registered to Appellant.

On August 1, 2022, Pearland PD investigators learned of another shooting at an Exxon Gas Station in Houston. Surveillance footage from the Exxon showed a heavy-set white male exit Appellant's Altima, then shooting and killing two individuals. Appellant was located at his residence and during his interview he told investigators that Redmond contacted Appellant telling him that he was going to rob an individual named "Nathan". Appellant was told to meet Redmond at the nature trail with gloves and a mask. Appellant drove to meet Redmond where he was handed a bag containing the firearm used to kill Alaniz, Appellant put that bag with the firearm in his closet at home.

Redmond was taken into custody and during the interview, he confessed to shooting Alaniz and taking his cell phone. Redmond also confessed to shooting two other individuals at the gas station and sealing their vehicle. Redmond gave Appellant three bags to keep at his home, a bag that contained marijuana, a bag with a change of clothes, and a bag with the firearm. Appellant has been charged with Murder in Brazoria County and two Capital Murders in Harris County.

### Appellant's Witness

Appellant's mother, Michelle Ann Perez, testified during the hearing. Until recently, Appellant's mother has always lived in Brazoria County. She recently moved to Galveston County, where she resides with her daughter. Additionally,

3

she provided insight into Appellant's work history and plans to attend college. Appellant's Mother claims that she only has the finances to afford a $6,000 payment for a $60,000 bond. If Appellant were to be released on a lower bond, she claims he would work with his father. Finally, she states that appellant would adhere to any bond conditions set forth by the court.

## Analysis

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Castillo–Lorente*, 420 S.W.3d 884, 887 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1.  The bail and any conditions of bail shall be sufficient to give reasonable assurance of compliance with the undertaking.
2.  The power to require bail is not to be so used as an instrument of oppression.
3.  The nature of the offense and the circumstances under which it was committed are to be considered, including whether the offense:

    (A) is an offense involving violence as defined by Article 17.03(b-3)(2); or

    (B) involves violence directed against a peace officer.
4.  The ability to make bail shall be considered, and proof may be taken on this point.
5.  The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

4

6.  The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following released on bail

7. The citizenship status of the defendant shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In addition to these rules, case law provides that courts may consider the following set of factors: (l) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; (7) the aggravating circumstances alleged to have been involved in the charged offense; and (8) whether the defendant is a citizen of the United States. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Rodriguez*, 595 S.W.2d 549, 550 n. 2 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

1.  **Nature and circumstances of alleged offense**

When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of possible sentence. *See Rubac*, 611 S.W.2d at 849; *Ex parte Nimnicht*, 467 S.W.3d 64, 67 (Tex. App.—San Antonio 2015, no pet.). It is appropriate to consider whether the offense alleged to have been committed involved violence in setting the amount of bail. *Nimnicht*, 467 S.W.3d at 67.

Appellant is charged with murder, a violent crime that carries a long

sentence. *See* Tex. Code Crim. Proc. Ann. art. 17.03(b-3)(2)(A) (defining murder as an offense involving violence). Murder is a first-degree felony, that carries a maximum punishment of life in prison. *See* Tex. Penal Code Ann. § 19.02(c). If the offense is serious and involves aggravating factors that may result in a lengthy prison sentence, then bail must be set sufficiently high to secure the defendant's presence at trial. *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 888 (Tex. App.— Houston [14th Dist.] 2014, no pet.). A defendant is entitled to the presumption of innocence on all charges. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.— Houston [14th Dist.] 2015, no pet.). When setting the amount of bail, the trial court must strike a balance between this presumption and the State's interest in ensuring the defendant will appear for trial. *Id.* The serious and violent nature of murder and the potential sentence appellant faces related to the charge weigh against a determination that the bail amount set by the trial court was excessive.

Appellant may not have had a direct role in the nature and circumstances of the alleged offense, according to appellee he is appropriately charged. Appellant is charged with murder through the law of parties. Under the law of parties, appellant acted with the intent to promote or assist the commission of the offense by encouraging, aiding, or attempting to aid another person in committing the offense, he is just as criminally responsible for the offense as if he had directly committed murder by his own conduct. *See* Tex. Penal Code Ann. § 77.01(a), 7.02(a)(2) (Vernon 2003). Appellee alleges that two separate events caused the death of three individuals, that crossed two county lines. Which is why appellant is charged with two capital murders in Harris County, Texas.

## 2. Sufficiently high to assure appearance but not oppress

Bail needs to be in an amount sufficient to give reasonable assurance that the defendant will appear. When bail is set so high that a person cannot realistically

pay it, however, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Bail may not be used as an instrument of oppression. *See Ex parte Guerra*, 383 S.W.3d 229, 233–34 (Tex. App.—San Antonio 2021, no pet.). Bail set in a particular amount becomes oppressive when it assumes that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (where bail amount set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression").

Appellant cites cases where bond was deemed excessive for a variety of felony offenses. There is no dispute that the bond set by the trial court is sufficiently high to give reasonable assurance that Appellant would comply with the undertaking of appearing in court as required in the future. Testimony during the hearing shows that if appellant were to be freed, appellant would live with his mother and work with his father. There was also no evidence presented at the hearing that defendant presents a flight-risk. The only evidence referring to defendant's flight risk is the fact that appellant is charged with three felonies out of two counties. A $3,000,000 bond falls within the range of reasonable amounts for murder, under these circumstances where appellant presents no flight risk, this factor is neutral. *See Id* at 498 (concluding that bail may be set a high amount where the defendant presents a strong flight risk).

### 3. Ability to make bail

To demonstrate inability to make bail, a defendant generally must establish his and his family's funds have been exhausted. *Ex parte Dupuy*, 498 S.W.3d at 234–35. The accused's ability to make bail is only one factor to be considered in

determining the appropriate amount of bail. *Id.* "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Id.* (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)).

The only evidence regarding appellant's ability to make a bond came in the form of testimony from his mother. Appellant's mother states that appellant had a job before these allegations, and she can only provide $6,000 towards a bond amount. Appellant did not provide additional information regarding his family's ability to provide funds towards a bond. Given appellant has the burden to prove the bail is excessive, this factor weighs against him. *See Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (affirming trial court's denial of habeas application where there is an absence of evidence on the defendant's ability to make bond).

### 4. Future safety of the victims and the community

The trial court must also consider the future safety of the victim of the alleged offenses and the community in setting appellant's bail amounts. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). Appellant is alleged to have been aware of the alleged robbery of Nathaniel Alaniz and was complicit in hiding the alleged murder weapon. Additionally, appellant is alleged to have been at the scene, and involved with, two other Harris County capital murder cases. The Court of Criminal Appeals has clarified, the Legislature, in placing "a mandatory duty" on trial courts to consider the safety of both the victim and the community when fixing bail. *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at \*1 (Tex. Crim. App. May 16, 2012). The victims in this case cannot be harmed because they are no longer alive. However, the safety of the community is still a component this

court must consider. Thus, this factor weighs in favor of the trial court's finding.

**5.** *Rubac* **Factors**

*Appellant's work record.* Appellant worked as a lifeguard and will work with his father as an electrician.

*Appellant's family and community ties.* Appellant's family has lived in the Brazoria and Harris County area for his entire life.

*Length of appellant's residency.* Appellant has lived in Brazoria County his entire life.

*Appellant's prior criminal record.* The record reflects that appellant does not have prior criminal history.

*Appellant's other bonds.* The record reflects that appellant has two other bonds out of Harris County, Texas, for Capital Murder, in the amount of $3,000,000 in each case.

*Aggravating circumstances in the charged offense.* Appellant is alleged to be guilty by the law of parties, for three separate murders out of two incidents.

### CONCLUSION

Appellant is charged with the violent and serious offense murder. Appellant has failed to meet his burden of demonstrating that he can not afford the bond. On the records and briefs presented to this court, we hold the trial court did not abuse its discretion in denying appellant's application for writ of habeas.

/s/     Ken Wise
        Justice

9

Panel consists of Chief Justice Christopher, Justice Wise and Jewell. Chief Justice Christopher authored a Memorandum Concurring Opinion, which is joined by Justice Jewell.

Do Not Publish — Tex. R. App. P. 47.2(b)